## JAMES M. YOUNGDALE v. CARL J. EASTVOLD.[1]

October 21, 1950.

Nos. 35,434, 35,435.

[1]Reported in 44 N. W. (2d) 459.

*Holmquist & Holmquist* and *Norvell C. Callaghan,* for James M. Youngdale, contestant.

*J. J. Purcell, C. J. Benson, Lee Loevinger,* and *Earl R. Larson,* for Carl J. Eastvold, contestee.

*J. A. A. Burnquist,* Attorney General, and *Donald C. Rogers,* Assistant Attorney General, for Mike Holm as secretary of state.

KNUTSON, JUSTICE.

At the September 1950 primary election, James M. Youngdale, hereinafter referred to as the contestant, and Carl J. Eastvold, hereinafter referred to as the contestee, were both candidates on the Democratic-Farmer-Labor party ticket for nomination for representative in congress for the seventh congressional district. The state canvassing board found that contestant received 5,886 votes and contestee 5,938 votes. Accordingly, it issued its certificate on September 28, 1950, certifying that contestee had been nominated. On September 30, 1950, contestant filed his petition with the clerk of the district court of Big Stone county, contesting the results of the primary and setting forth, among other things:

"VI.

"That the various judges and clerks at said election in each and all of the election precincts in said seventh congressional district in said state, in counting and canvassing the votes cast at said Primary election for the said nomination committed errors and mistakes in so doing in that said judges and clerks counted certain ballots so cast at said Primary election as being cast for

the contestee herein when in truth and in fact they were not so cast and should not have been counted as cast for any one for said nomination.

## "VII.

"That the various judges and clerks at said Primary election in each and all of the election precincts in said congressional district, in counting and canvassing the votes cast at said primary election for said nomination, committed errors and mistakes in so doing in that said judges and clerks counted certain ballots so cast at said Primary election as being cast for the contestee when in truth and in fact they were not so cast, but were in truth and in fact cast for the contestant and should have been so counted as cast for said contestant.

## "VIII.

"That the various judges and clerks at said primary election in each and all of the election precincts in said congressional district, in counting and canvassing the votes cast at said primary election for said nomination committed errors and mistakes in so doing in that said judges and clerks counted certain ballots so cast at said primary election as being cast for the contestee herein when in truth and in fact said votes should not have been so counted because of the fact that the said votes were so cast by persons who were not then and there legal voters of said congressional district by reason of said person or persons being under lawful age, or not a citizen, resident or legal voter of said precinct in which said votes were cast."

Contestant's prayer for relief is that the court fix a time and place for a hearing and that he be declared to be the nominee for the office involved. On October 2, a copy of the petition was served on contestee, and on October 4 a copy of the petition was served on Mike Holm as secretary of state. On October 12, contestee appeared specially and moved the court to dismiss the petition on the ground and for the reason that the court lacked jurisdiction over the subject matter. The motion was denied, and

an appeal was taken to this court. On the petition of contestee, we issued our alternative writ of prohibition, returnable October 18, restraining further action by the trial court until the matter could be heard. The appeal and the petition to make the writ absolute both involve the same question whether the court has jurisdiction over the subject matter, and they will be considered together.

It is conceded that contestee has his legal residence in Big Stone county and contestant in Swift county.

Two statutory provisions are principally involved. M. S. A. 208.01 reads as follows:

"Any 25 voters of the state, or of any political subdivision thereof, may contest the right of any person to nomination, position, or office for which these voters had the right to vote, on the ground of deliberate, serious, and material violation of the provisions of chapters 200 to 212 or of any other provisions of law relating to nominations and elections. Any defeated candidate for a nomination, position, or office may make the contest. The proceeding shall be commenced by petition filed in the district court of the county in which the candidate whose election is contested resides, and the contest shall be carried on according to law.

"In case of contests over nomination, the court shall pronounce whether the incumbent or contestant was duly nominated, and the person so declared nominated shall have his name printed on the official ballots."

Section 208.07 reads:

"Any voter may contest the election of any person for or against whom he had the right to vote, who is declared elected to a state, county, or municipal office, or the declared result upon a constitutional amendment or other question submitted to popular vote, by proceeding as follows: He shall file with the clerk of the district court of the county of his residence, within ten days after

the canvass is completed a written notice of contest, specifying the points upon which the contest will be made, and cause a copy thereof to be served within said period upon the contestee and upon the official authorized to issue the certificate of election, when the contest relates to the election of an officer, upon the secretary of state when it is a matter submitted to popular vote which affects the entire state, or any subdivision thereof larger than a county, upon the auditor when it affects a single county, and in all cases upon the municipality affected. In case of a contest as to a state office, the notice may be filed in any district court of the state, but the place of trial may be changed as in civil actions. When the contestee desires to offer testimony on points not specified in contestant's notice, he shall file and serve on the contestant notice thereof specifying such additional points. Such notices shall be treated as the pleadings in the case, and may be amended in the discretion of the court. All notices provided for herein shall be served in such manner and within such times as the court may by order direct, and the testimony shall be taken, and the matter tried and determined, in the same manner as such actions are tried by the court, at a general or special term, if any, occurring within 30 days after such canvass. When no term is already fixed, the judge shall seasonably appoint a special term to be held within such time."

It is the contention of contestee that the petition here involved fails to bring the contest within the provisions of either of these statutory provisions, and, further, that contestant has not complied with the provisions of our statute so as to confer upon the district court jurisdiction over the subject matter. He also contends that no provisions of our statute provide for a contest between candidates for nomination to the office of representative in congress other than for a violation of our corrupt practices act, and, specifically, that there are no provisions whereby candidates for that office may contest an election for mere mistake in counting ballots.

It is clear that our courts have no jurisdiction over the election of representatives to congress, but that congress is its own judge of the elections, returns, and qualifications of its members. U. S. Const. art. I, § 5. State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 212 N. W. 604; Williams v. Maas, 198 Minn. 516, 270 N. W. 586. See, also, 54 Am. Jur., United States, § 17; Annotation, 107 A. L. R. 205.

It is generally conceded that the states have control over the method of nominations for office. We have recognized the jurisdiction of our courts over primary election contests involving the office of representative in congress in Flaten v. Kvale, 146 Minn. 463, 179 N. W. 213.

In Leu v. Montgomery, 31 N. D. 1, 5, 148 N. W. 662, 663, involving a contest over nomination for a state legislative office, the North Dakota court said:

"* * * a primary election is not an election within the meaning of such constitutional provision, nor within the common acceptation of the term. It merely takes the place of the former nominating conventions, and it is improper to say that the successful candidate at such primary is elected to any office. He is merely placed in nomination as a candidate for election to the office."

Filing a proper petition under M. S. A. 208.01, or a notice under § 208.07, in the manner prescribed by the legislature is jurisdictional. Strom v. Lindstrom, 201 Minn. 226, 275 N. W. 833.

The authority of courts to entertain election contests is purely statutory. Absent statutory authorization, the courts are without jurisdiction to determine election contests. Johnson v. DuBois, 208 Minn. 557, 294 N. W. 839. If the statutes do not authorize the courts to entertain election contests for the office here involved on the ground and for the reasons alleged in contestant's petition, the court has no jurisdiction over the subject matter.

M. S. A. 208.07 requires the filing of a written notice of contest with the clerk of the district court of the contestant's residence

within ten days after the canvass is completed. Even if the petition before us can be construed as a statutory notice under § 208.07, it must follow that it has not been filed in the county of contestant's residence, so the court acquired no jurisdiction under § 208.07.

We come then to the main question, namely: Did the court acquire jurisdiction under § 208.01?

The legislative history of this statutory provision is of interest and may cast some light (although it is not without shadows) upon the legislative intent.

Our first corrupt practices act came into being by virtue of L. 1895, c. 277. By its terms it applied to candidates for congress and other candidates. § 6. By R. L. 1905, provisions of our laws relating to elections and corrupt practices were rearranged under headings, including "Elections," "Corrupt Practices," and "Penal Provisions." See, Anderson v. Firle, 174 Minn. 333, 334, 219 N. W. 284. Many of our election laws, including those involving corrupt practices, were again recodified or amended by Sp. L. 1912, Chapter 3, which deals with corrupt practices, included § 33, which reads as follows:

"Any twenty-five voters of the state, or of any political division thereof, may contest the right of any person to nomination, position, or office for which said voters had the right to vote, on the ground of deliberate, serious and material violation of the provisions of this act or of any other provisions of law relating to nominations and elections. Any defeated candidate for said nomination, position or office may make said contest. Said procedure shall be commenced by petition filed in the district court of the county in which the candidate whose election is contested resides, and the contest shall be carried on according to law.

"In case of contests over nominations, the court shall pronounce whether the incumbent or contestant was duly nominated, and the person so declared nominated shall have his name printed on the official ballots."

Sp. L. 1912, c. 3, § 35, provides the procedure for instituting a proceeding to challenge an election for violation of the corrupt practices act. It requires the "proceeding" to be filed in the district court of the county in which the *contestee* resides. These provisions remained the same until the enactment of L. 1939, c. 345, which recodified our entire election code. See, Mason St. 1927, §§ 570 and 572. Until the 1939 recodification, both of these sections obviously dealt only with violations of the corrupt practices act. The new codification was divided into 12 separate parts. Part Seven deals with election contests. Part Ten deals with corrupt practices. Each part has its own section numbers.

What had been L. 1912, c. 3, § 33 (and remained as Mason St. 1927, § 570) was transposed verbatim from the provisions dealing with corrupt practices to the first section under Part Seven dealing generally with election contests. Its scope was extended so that while prior thereto it had dealt only with the corrupt practices act it now included any "deliberate, serious and material" violation of any of the provisions of the whole election law. In Minn. St. 1941, § 208.01, this language was made more specific by providing "deliberate, serious, and material violation of the provisions of chapters 200 to 212," which takes in our entire election code. It has so remained in our present statute. M. S. A. 208.01. What had been Sp. L. 1912, c. 3, § 35 (Mason St. 1927, § 572) was retained as L. 1939, c. 345, Part Ten, c. 1, § 35, dealing with corrupt practices, and is now M. S. A. 211.35.

From the above changes, it seems apparent that the legislature must have intended to extend the scope of this provision, theretofore dealing only with violations of the corrupt practices act, so that it would apply to any violation of any of our election laws.

The question now before us is this: Was it also the intention of the legislature to change the nature of the matters that could be considered under this section? Until the 1939 recodification, the only statutory provision for contesting elections, except for a violation of the corrupt practices act, was the section which is

now M. S. A. 208.07. It was limited then, as it is now, to contests involving a state, county, or municipal office, or the declared result upon a constitutional amendment, or other question submitted to popular vote. Up to the time of the 1939 recodification, there was no authority in our statutes for election contests involving the office of representative in congress for anything other than a violation of our corrupt practices act, and, unless the transposition of § 208.01 in the 1939 recodification from the chapter dealing with corrupt practices to that dealing generally with election contests gave our courts authority over a contest involving the matters alleged in the petition before us, there is no such authority.

It is significant that § 208.07 does not limit the operation of the statute to any particular grounds. It is general in its scope. Section 208.01, on the other hand, grants authority for a contest only for "deliberate, serious, and material violation" of law. L. 1939, c. 345, Part 12, § 2, provides:

"* * * The provisions of this act, so far as they are the same as those of existing statutes, shall be construed as continuations thereof, and not as new enactments; * * *."

In transposing § 208.01, as we have set forth above, no change was made in its terminology, except that its scope was extended to include a violation of any of our election laws instead of only a violation of our corrupt practices act. Prior to the 1939 recodification, the section clearly had no application to mere errors in counting ballots. It is difficult to see how we can now read such meaning into it.

In denying contestee's motion to dismiss, the trial court did so upon the authority of Hunt v. Rolloff, 224 Minn. 323, 28 N. W. (2d) 771. In that case we said that §§ 208.01, 208.05, and 208.07 should be read together. The three sections have entirely different legislative histories. Section 208.07 has been a part of our laws substantially as it now is since 1901. L. 1901, c. 365; R. L. 1905, § 336. Reference to L. 1919, c. 162, shows that §§ 208.03,

208.04, and 208.05 are all part of the same enactment dealing exclusively with contests involving senator or representative in our legislature. Except for minor changes made by L. 1945, c. 229, these statutes have remained exactly as amended by L. 1919, c. 162. A reëxamination of § 208.05 leads us to the conclusion that it is not to be read as part of § 208.01, nor is § 208.01 limited by § 208.05, which pertains only to contests involving legislative offices. We are convinced that the result in Hunt v. Rolloff, *supra*, was correct in any event, but that reference to § 208.05, as qualifying § 208.01, was incorrect and unnecessary. Unfortunately, when § 208.01 was moved from the chapter dealing with corrupt practices to that dealing generally with election contests, its companion provision, § 35 (Mason St. 1927, § 572), was not moved with it. This leaves § 208.01 suspended, with no direct statutory direction as to how to proceed, except for the provision that the contest shall be carried on according to law. Until there is a more definite legislative direction, we believe that it should be sufficient if the proceedings, after filing the petition, are carried on as required by § 208.07.

It should also be noted that in Johnson v. DuBois, 208 Minn. 557, 294 N. W. 839, *supra*, and in the dissenting opinion in Hunt v. Rolloff, 224 Minn. 323, 28 N. W. (2d) 771, *supra*, it is stated that § 208.01 relates to contests involving corrupt practices. So it does, but it is not now limited alone to violations of the corrupt practices act, but it authorizes contests for violation of any of our election laws if they are deliberate, serious, and material.

Profound confusion exists with respect to these statutes. In contests over nominations and elections, it is highly important that the dispute be disposed of speedily in order that the election machinery may not be completely thrown out of gear. It is consequently highly desirable that the statutes be explicit as to how and when the parties must proceed. The procedure should be made uniform, whether a candidate proceeds under § 208.01, § 208.07, or § 211.35. The type of notice, method and time for

144

service, and trial procedure should be clarified so that it may be easily understood by all who are affected by the contest. It is to be hoped that the legislature at its earliest opportunity will clarify these laws.

We come therefore to the conclusion that there are no statutory provisions authorizing our courts to entertain contests involving the nomination or election to the office of representative in congress for mere errors in counting the ballots, and that the petition before us is insufficient to bring the contest within the scope of § 208.01. Consequently, the court is without jurisdiction, and the petition should be dismissed. On the appeal the order is reversed, and the alternative writ of prohibition is quashed.

Inasmuch as the same questions are involved in the appeal and in the petition for a writ of prohibition, no costs or disbursements will be allowed on the petition for a writ of prohibition.

[1]Reported in 44 N. W. (2d) 465.