SETH R. PHILLIPS v. GEORGE E. ERICSON.

80 N. W. (2d) 513.

January 11, 1957—No. 37,137.

*Robins, Davis & Lyons, Richard Converse,* and *J. C. Cottingham,* for appellant.

*Carl E. Erickson,* for respondent.

KNUTSON, JUDGE.

At the general election held in 1956, contestant and contestee were rival candidates for the office of representative from the fifty-second legislative district in our state house of representatives. Contestee received the highest number of votes. The election was held on November 6 and the county canvassing board completed its canvass of the votes on November 9. On November 19 contestant filed a petition with the clerk of the District Court of Cass County, in which county contestee resides, alleging that contestee had been guilty of serious violations of our Corrupt Practices Act and for that reason was disqualified from holding office. On the same day, one of the judges of the District Court of Cass County issued an order directing service of a copy of the petition and order upon contestee personally or by leaving a copy thereof with a person of suitable age and discretion then residing in the place of usual abode of contestee within five days thereafter. On the evening of November 19, the county auditor of Cass County was working in his office between six and seven o'clock. Copies of the petition and order of the court were then handed to him by counsel for contestant. The next day, November 20, copies of the petition and order were served on the

deputy county auditor by the sheriff, and copies were also served upon contestee by leaving them with his wife at his usual place of abode. With respect to a hearing upon the petition, the court's order provides:

"IT IS FURTHER ORDERED that after the expiration of eleven (11) days from the service of said copy of petition and Order on said George E. Ericson, contestee, the above matter shall be set down for hearing of all the issues that may remain in said matter and for the trial of the matter set forth in said petition and to be heard and tried on the 5th day of December, 1956 at 10 o'clock in the forenoon of said day."

On the day and time specified for a hearing and trial of said matter, contestee, with his attorney, made a special appearance in the courthouse at Walker, Minnesota, which is the county seat of Cass County, and moved for a dismissal of the proceeding on the following four grounds: (1) That the court lacks jurisdiction over the subject matter thereof because neither the petition nor any other notice of contest or order was served upon the official authorized to issue the certificate of election within ten days after the canvass was completed; (2) that the court lacks jurisdiction over the person of the contestee because he has not been personally served with a copy of the petition or any other notice of contest or order within ten days after the canvass was completed; (3) that neither the petition nor any other notice of contest or order specified the place of hearing; and (4) that the petition fails to state a claim against contestee upon which relief can be granted.

After a hearing on the matters presented by the special appearance, the court granted the motion on all four grounds. The case is here on an appeal from the order of dismissal.

The only question before us on this appeal is whether the court erred in granting contestee's motion to dismiss the proceeding. If contestee's position is tenable on any one of the four grounds, the order must of course be affirmed. In order to determine the questions presented, it will be necessary to consider each of the four grounds.

In the determination of a proceeding of this kind we are controlled by certain definite rules which must always be kept in mind.

 The authority of courts to entertain election contests is purely statutory, and, absent statutory authorization, the courts are without jurisdiction to entertain such proceeding.[1] An election contest is a special proceeding but is tried as a civil action,[2] and the usual rules governing such actions prevail.[3] Such proceedings are excepted from the rules of civil procedure insofar as the statutes are inconsistent with the rules.[4]

 Minn. Const. art. 4, § 3, provides:

"Each house shall be the judge of the election returns *and eligibility* of its own members; * * *." (Italics supplied.)

The right of self-determination under this constitutional provision extends not only to the question of who won the election but to eligibility as well. The courts may not interfere with this right, nor have they any jurisdiction over legislative election contests, except such as is expressly conferred upon them by the legislature. In State ex rel. McKusick v. Peers, 33 Minn. 81, 82, 21 N. W. 860, the extent of the court's authority was defined as follows:

"* * * not only must each house determine, in case of a contest, who is elected to be a member, but must determine upon what evidence it will decide the question, and how it will procure such evidence. Over the proceedings the judiciary has no control, and could not have without trenching on the independence of the house."

In State ex rel. Norwood v. Nelson, 141 Minn. 499, 501, 169 N. W. 788, 789, we said with respect to this authority:

"Courts and the several judges thereof have no jurisdiction over legislative election contests, and should not assume authority to

---

[1]State ex rel. Narveson v. Village of McIntosh, 95 Minn. 243, 103 N. W. 1017; Johnson v. Dubois, 208 Minn. 557, 294 N. W. 839; Youngdale v. Eastvold, 232 Minn. 134, 44 N. W. (2d) 459; 6 Dunnell, Dig. (3 ed.) §§ 2979, 2981.

[2]Ford v. Wright, 13 Minn. 480 (518) ; Hanson v. Emanuel, 210 Minn. 51, 297 N. W. 176.

[3]Miller v. Maier, 136 Minn. 231, 161 N. W. 513, 2 A. L. R. 399.

[4]Rules of Civil Procedure, Appendix A.

take any steps in such contests unless clearly authorized, and then only to the extent specifically given. The character of the duties conferred upon judges and justices of the peace in these contests has been well stated in State v. Searle [59 Minn. 489, 61 N. W. 553], *supra,* and State v. Peers, 33 Minn. 81, 21 N. W. 860."

With respect to the right of the legislature to confer upon the courts authority to hear and determine election'contests involving legislative offices, we said in State ex rel. Haines v. Searle, 59 Minn. 489, 492, 61 N. W. 553, 554, speaking through Mr. Justice Mitchell:

"There is no force in the suggestion that, as thus construed, the act is in conflict with the Constitution, Art. 4, § 3. It in no way interferes with the right of the legislature to judge of the election of its own members any more than would a law providing for the taking of depositions to be used on the trial of the contest before that body. It binds nobody and determines nothing. The whole matter is still with the legislature, who can receive or reject the evidence secured by the inspection and examination of the ballots, and, if they receive it, give it only such weight as they see fit. It is merely a convenient method of preparing or securing evidence in advance of the meeting of the legislature, instead of waiting until that body convenes; and it no more interferes with its constitutional right to judge of the election of its members than does the law requiring the board of canvassers to give a certificate of election to the candidate receiving the highest number of votes. * * * This law, as we have construed it, is a provision enacted by the legislature itself for securing or preparing evidence to be used on the trial of the contest; and, as said in the case last cited, the House may reject it altogether, and provide, if they see fit, for the reexamination of the ballots in some other way. In appointing persons to examine the ballots, the court, so far from interfering with the constitutional right of the legislature, is but carrying out its directions."

Except insofar as authority has been conferred upon the courts to hear and determine election contests involving members of the legislature, our power is as limited as it is in contests involving the

election of members of Congress. In State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 407, 212 N. W. 604, which involved an alleged violation of the Corrupt Practices Act, we said:

"In the present case the election has been held and the result declared. The only question now open is whether the successful candidate shall be permitted to take his seat as a member of the house of representatives. The Constitution declares that each house of Congress 'shall be the judge of the elections, returns and qualifications of its own members.' Art. I, § 5. This provision gives the house of representatives exclusive jurisdiction to determine whether the respondent is or is not disqualified from becoming a member of that body. State ex rel. McKusick v. Peers, 33 Minn. 81, 21 N. W. 860; State ex rel. Norwood v. Nelson, 141 Minn. 499, 169 N. W. 788; * * *."[5]

While that case cites two of our prior decisions in support of its decision, there is a distinction between a contest involving a seat in Congress and one in our state legislature. In the one case we may lack jurisdiction for the reason that no authority has been conferred upon us by Congress, while we may have such jurisdiction to hear contests involving elections to our state legislature because that body has conferred such authority upon the courts.

In Flaten v. Kvale, 146 Minn. 463, 179 N. W. 213, we went so far as to disqualify a candidate for Congress at a primary election. We held also that the disqualification did not operate so as to nominate the contestant but, instead, that it simply created a vacancy which must be filled as provided by law.[6] The Flaten case was distinguished in State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 212 N. W. 604, on the ground that it involved a primary election, but the result was still to prevent the disqualified candidate from being elected to

[5]As to the right of the court to strike the name of a candidate for the legislature who has received a certificate of nomination at a primary election, see State ex rel. McGrath v. Erickson, 203 Minn. 390, 281 N. W. 366.

[6]But compare that case with Harrison v. Nimocks, 119 Minn. 535, 137 N. W. 972, and State ex rel. McGrath v. Erickson, 203 Minn. 390, 281 N. W. 366.

office. The Selvig case, however, is not authority for the proposition that, where the legislature has expressly authorized the courts to try election contests involving its members, they may not do so. The final judgment may still be rendered by the legislature, irrespective of what the court may decide. The Flaten case may possibly be explained on the theory that the jurisdictional question was not raised.

■ The questions then arise: Has the legislature conferred upon the courts the authority to hear and determine whether a winning candidate for the house of representatives has forfeited his right to hold the office because of a violation of the Corrupt Practices Act? If so, under what provisions of our statutes must a contestant proceed?

In Youngdale v. Eastvold, 232 Minn. 134, 44 N. W. (2d) 459, we attempted to trace the history of some of our present statutory provisions pertaining to election contests and indicated in that opinion that much confusion exists with respect to the law on this subject. Such confusion still exists. The extent to which the laws are confusing is aptly illustrated by the case of Hunt v. Rolloff, 224 Minn. 323, 28 N. W. (2d) 771, where, in a contest involving the election of a judge of the district court, two members of this court concurred in the court's opinion, three members concurred specially, and two members dissented as to which of our statutory provisions should apply and how they should be construed. In order that the bench and bar may have some guide to go by, we shall endeavor, as best we can, to interpret these statutes and to state what in our opinion is the proper procedure for the various types of contests covered by our statutes.

In the first place, it is well to keep in mind that there is a fundamental difference between a contest instituted, by a voter or by a defeated candidate for an office, to determine who of rival candidates was actually elected by a majority of the legal votes cast at the election and a proceeding brought by a group of voters or a defeated candidate to disqualify a winning candidate from holding

that office. This difference is defined in Johnson v. DuBois, 208 Minn. 557, 565, 294 N. W. 839, 842, as follows:

"The fundamental difference between a contest for irregularities in the conduct of an election under § 7 [M. S. A. 208.07] and one for violations of the corrupt practices act under § 1 [M. S. A. 208.01] is that the former is based on the acts and omissions of those in charge of the election and the latter is based on the acts of the candidate or those for whom he is personally responsible."

In the former case, if the contestant prevails, the person determined to have received the highest number of legal votes is declared elected to the office. In the latter case, if the person or persons, whether it be a defeated candidate or voters, who commence the action prevail, the one who was declared elected is ousted, and it does not follow, in the absence of a statute so providing, that the candidate receiving the next highest number of votes is elected.[7] In Barnum v. Gilman, 27 Minn. 466, 470, 8 N. W. 375, 376, 38 Am. R. 304, 305, we said:

"The authorities of both the English and American courts agree that the ineligibility of a candidate who has received the highest number of votes for an office will not, in the absence of any statute declaring them to be void, work the result of giving the election to the next highest candidate, when the voters for the former had no prior actual knowledge of the disqualifying fact, together with such other information as would raise a reasonable inference that they also knew that the fact amounted in law to a disqualification rendering the person voted for ineligible."

The great weight of authority in England and America is in accord with this rule.[8] The rule applies to a candidate disqualified for a violation of the Corrupt Practices Act.[9]

In our early law dealing with corrupt practices, R. L. 1905, § 354,[10] provided as follows:

---

[7]Cf. Flaten v. Kvale, 146 Minn. 463, 179 N. W. 213.

[8]Annotation, 13 L.R.A.(N.S.) 1013.

[9]Prentiss v. Dittmer, 93 Ohio St. 314, 112 N. E. 1021, L. R. A. 1917B, 191; 18 Am. Jur., Elections, § 318; 29 C. J. S., Elections, § 305.

[10]See, also, L. 1895, c. 277, § 14.

"The candidate receiving the next highest number of votes for the same office may intervene or be impleaded, and in such case, if judgment of ouster is rendered as provided in § 353, such judgment shall award the office to the person who received the next highest number of votes therefor, unless it shall have been determined, upon appropriate pleadings and proof, that he has also violated the provisions of this chapter, in which case the office shall be declared vacant."

When our Corrupt Practices Act was reenacted by the adoption of Sp. L. 1912, c. 3, this provision was dropped, and it has not been in our statutes dealing with corrupt practices since that time.

We recognize, of course, the power of the legislature, under its constitutional prerogative to be the judges of its own election, to seat whom it will in spite of a judicial determination of ineligibility, but, for the purpose of interpreting these statutes, it is well to have in mind the distinction between the two types of proceeding.

In Hunt v. Rolloff, 224 Minn. 323, 28 N. W. (2d) 771, which was a proceeding involving the right to hold office by a candidate declared elected to the office of district judge, the majority of the court concluded that M. S. A. 208.01, 208.05, and 208.07 should all be read together. In Youngdale v. Eastvold, 232 Minn. 134, 44 N. W. (2d) 459, we pointed out that § 208.05 should not be read as a part of § 208.01; neither should it be read as part of § 208.07 except to the extent hereinafter stated.

It might be well to first dispose of § 208.05. Starting with R. L. 1905, we find that §§ 332 to 335, inclusive, deal with election contests involving persons declared elected to the office of senator or a member of the house of representatives in the legislature. Section 336 deals with election contests to other state, county, or municipal offices or the declared result upon a constitutional amendment or other question submitted to popular vote.

In State ex rel. County of Pennington v. District Court, 113 Minn. 298, 301, 129 N. W. 514, 515, involving an inconsistency between R. L. 1905, § 336 and § 339, where the difficulties of interpretation were very similar to those involved in the case now before us with

respect to what statutory provisions are applicable to election contests, we said:

"Prior to the revision of 1905, the omnibus clause, authorizing contests upon 'any question submitted to popular vote,' was found only in section 339. That clause was by the revision also inserted in section 336. The manifest purpose of this was to include all election contests, *excluding legislative,* in one comprehensive system, the procedure of which fully protects the rights of all interested parties. If this be not so, then we must ascribe to the legislature a deliberate intention to confuse the law on the subject, and of granting one right, with alternative inconsistent methods of asserting it. Obviously this was not the intention. On the contrary, the revision of the section was made with care, and discloses an evident purpose to simplify the statutes, and to produce one workable system of contests, applicable alike to all questions submitted to popular vote, and other contests there provided for." (Italics supplied.)

The result of that decision was that all contests involving a determination of who receive the highest number of legal votes at the election, *except contests involving legislative offices,* were required to be brought under § 336.[11] The exception regarding legislative offices was undoubtedly made because of the fact that such contests were expressly covered by §§ 332 to 335, inclusive.

These statutory provisions (R. L. 1905, §§ 332 to 335) remained the same in G. S. 1913. R. L. 1905, §§ 332 to 335, inclusive, became G. S. 1913, §§ 525 to 528, inclusive.

L. 1919, c. 162, repealed G. S. 1913, §§ 525, 526, and 527, and enacted in their place new provisions dealing with election contests involving legislative offices. The scope of the new act is stated in the title as follows:

"An act relating to legislative contests in case of persons declared elected to the state legislature, *and to the issuing of certificate of election to the one found to receive the highest number of votes,* and

---

[11] R. L. 1905, § 336, is now M. S. A. 208.07.

to the taking and returning of evidence to the legislature." (Italics supplied.)

Some important changes were made in the new law. Under G. S. 1913, § 525, et seq., the contest could be instituted by a voter of a senatorial or representative district.[12] The new law permitted a contest only by a candidate for the office. Under the law prior to 1919 the contest was heard by justices of the peace. The new law gave the district court authority to hear it. In addition to stating the purpose of the act in the title, L. 1919, c. 162, § 3, contained the following provision:

"* * * The only questions to be tried by the court shall be as to which of the parties to the contest received the highest number of votes legally cast at the election, and as to who was entitled to receive the certificate of election. The judge trying the proceedings shall make findings upon the questions so tried. Further evidence upon the points specified in the notices shall be taken and preserved by the judge trying the contest, or under his direction by some person appointed by him for that purpose."

Section 3 then provides that the county auditor or secretary of state shall make and deliver to the one found to have received the highest number of legal votes a certificate of election. Either party may then appeal to the supreme court or, upon application of either party, the files and records with all the evidence taken is transmitted to the legislature.

L. 1919, c. 162, became without change G. S. 1923, §§ 484, 485, and 486 (Mason St. 1927, §§ 484 to 486). R. L. 1905, § 335, dealing with the conduct of the contest *in the legislature*, was not disturbed by L. 1919, c. 162. It remained the same in G. S. 1913, § 528, and G. S. 1923, § 487. It is evident that up to the adoption of L. 1939, c. 345, all of these sections of our statutes were limited, as was the act from which they came (L. 1919, c. 162), to contests involving a determination of which candidate for our senate or house of representatives received the highest number of legal votes. The ultimate

---

[12]Our earliest recodification of election laws permitted a contest by either voter or candidate. See, L. 1861, c. 15, § 49.

decision of the court determined who was entitled to a certificate of election and nothing more.

When the new election code was adopted (L. 1939, c. 345), Mason St. 1927, §§ 484 to 487, inclusive, were copied almost verbatim as L. 1939, c. 345, Part 7, §§ 3 to 6, inclusive. They were codified in M. S. A. 1941 as §§ 208.03 to 208.06, inclusive. They have remained the same since that time except that by L. 1945, c. 229, §§ 5, 6, the time within which the contestee may serve a notice of additional points on which he wishes to offer evidence was changed from 15 days to 10 days; the time for bringing the proceeding on for trial was changed from 30 days to 20 days; and notice of contest is now required to be filed upon the official authorized to issue the certificate of election.

From a historical review of these sections, it must be clear that M. S. A. 208.03 to 208.06, inclusive, relate exclusively to contests whereby a candidate for the office of senator or representative in our legislature may contest the election of an opponent declared to be the winner and that these statutory provisions are inapplicable to any other election contest. We held in Hanson v. Emanuel, 210 Minn. 51, 52, 297 N. W. 176, 177, that L. 1939, c. 345, Part 7, § 5 (M. S. A. 208.05), "relates exclusively to election contests involving legislative offices." Here it becomes important to keep in mind the distinction between a contest involving an election as such and a proceeding to disqualify an elected candidate for some reason not involving the regularity of the election. It is significant to note that some of the provisions of §§ 208.07 and 208.08, pertaining to procedure and trial, are adopted by §§ 208.03 to 208.06. To the extent that they are so adopted, they of course govern; otherwise they do not.

It is interesting to note that in § 208.03 notice of the contest may be served on the contestee within five days after filing of the notice with the clerk of the district court in the manner of service of a summons in a civil action *or* within the time and manner prescribed for serving notices in § 208.07. Since the amendment by L. 1945, c. 229, § 7, § 208.07 requires service of a written notice within the

same time as the notice must be filed (ten days after the canvass is completed) and, in addition, it must also now be served upon the official authorized to issue the certificate of election. Prior to this amendment, the notice was served in such time and manner as the court might direct. The legislature could hardly have intended both of these conflicting requirements to be controlling. It must now be held that service under § 208.03 within five days after filing is sufficient, since § 208.03 was amended in other respects by L. 1945, c. 229, but not with respect to the time of service of the notice. Readoption of this provision of the statute at the same time as § 208.07 was amended prevents application of the rule that the last of inconsistent provisions should be given effect. Failure to amend § 208.03 in this respect must be deemed to be due to an oversight.

Prior to the adoption of L. 1939, c. 345, Mason St. 1927, §§ 488 to 495, inclusive, contained the exclusive provisions for bringing of an election contest by a voter, including a defeated candidate,[13] to determine who had received the majority of legal votes cast at the election. Here it is again important to keep in mind the distinction between contests involving a determination of which candidate received the highest number of legal votes and proceedings commenced to have a person receiving the highest number of votes declared ineligible for violation of our corrupt practices laws or for some other act of the candidate. Mason St. 1927, § 488, was complete in itself with respect to the manner of filing and service of notice. Corrupt practices were governed by Mason St. 1927, §§ 538 to 578, inclusive.

Mason St. 1927, § 570, then a part of the division of our election laws pertaining to corrupt practices, provided for the commencement of a proceeding by 25 voters of the state, or by a defeated candidate, to contest the right of any person to nomination, position, or office on the grounds of a deliberate, serious, and material violation of the act. The language "violation of the provisions of this act" has its origin in Sp. L. 1912, c. 3, § 33. Prior to that time, R. L. 1905,

---

[13]Ekberg v. Jensen, 165 Minn. 116, 205 N. W. 702, holds that a candidate for the same office is a voter under this provision.

§§ 348 to 358, inclusive, contained the statutory law relating to corrupt practices. Under the statutes prior to Sp. L. 1912, c. 3, no provision was made for a contest instituted by a voter or voters other than the provisions relating to election contests generally. Sp. L. 1912, c. 3, is a comprehensive act dealing with all phases of corrupt practices. Section 33 of that act, which was codified as G. S. 1913, § 599, read as follows:

"Any twenty-five voters of the state, or of any political division thereof, may contest the right of any person to nomination, position, or office for which said voters had the right to vote, on the ground of deliberate, serious and material violation of the provisions of *this act* or of any other provisions of law relating to nominations and elections. Any defeated candidate for said nomination, position or office may make said contest. Said procedure shall be commenced by petition filed in the district court of the county in which the candidate whose election is contested resides, and the contest shall be carried on according to law." (Italics supplied.)

This provision remained as part of the corrupt practices law without change as Mason St. 1927, § 570. Sp. L. 1912, c. 3, § 36, provided for the disqualification of a guilty candidate but omitted the provision giving the next highest candidate the office, which had been contained in R. L. 1905, § 354, as stated above. The provisions of the 1912 act are codified in both G. S. 1913 and G. S. 1923 under a separate grouping of our election laws entitled "Corrupt Practices." Mason St. 1927, § 570, provides, as it will be seen by reading the above, for a commencement of the action by filing a petition in the district court of the county in which the candidate whose election is contested resides. It contains no other directions with respect to service of notice except that it provides that "the contest shall be carried on according to law." In Saari v. Gleason, 126 Minn. 378, 380, 148 N. W. 293, 294, we said: "This means according to the law regulating election contests in general." We also held in that case that Sp. L. 1912, c. 3, was intended to provide two alternative remedies in case of violation of the Corrupt Practices Act (126 Minn. 381, 148 N. W. 294), "one by criminal prosecution and conviction and a

supplemental judgment of ouster, and the other by the more summary and expeditious means of an election contest." It seems clear that the words "violation of the provisions of this act" were used in Mason St. 1927, § 570, in reference to violations of Sp. L. 1912, c. 3; that is, the Corrupt Practices Act and nothing more.

That, then, is how the law appeared when we recodified our election laws by adoption of L. 1939, c. 345. Many of the former statutes were copied verbatim. Part 12, § 2, of the new act (M. S. A. 200.38) provides in part:

"* * * The provisions of this act, so far as they are the same as those of existing statutes, shall be construed as continuations thereof, and not as new enactments; and references to statutes not repealed to provisions of law which are re-enacted herein shall be construed as applying to such provisions as so incorporated in this act."

This rule of construction must be held to apply to those statutory provisions of the old law simply copied into the recodification.

Apparently it was the intention of the legislature at that time to simplify these various procedures. As we pointed out in Youngdale v. Eastvold, 232 Minn. 134, 44 N. W. (2d) 459, when L. 1939, c. 345, was enacted our legislature divided the election laws into 12 parts. Part 7 deals with contests generally. Part 10 deals with corrupt practices. Each part was codified as a separate chapter in M. S. A. 1941 and remains so today. Part 7 became M. S. A. c. 208; Part 10 became c. 211. What had been Mason St. 1927, § 570, dealing exclusively with corrupt practices, was transposed from that division under our election laws as they then existed to the part dealing generally with election contests; that is, Part 7 (c. 208). By this transposition it could hardly have been the intention of the legislature to restrict the scope of this provision. Rather, it must have been intended to extend its scope. As we pointed out in Youngdale v. Eastvold, *supra,* in the recodification (L. 1939, c. 345, Part 7, § 1) the language "on the ground of deliberate, serious and material violation of the provisions of *this act* or of any other provisions of law relating to nominations and elections" (italics supplied) was re-

tained exactly as it had been in the preceding Mason St. 1927, § 570. When the section was codified as M. S. A. 1941, § 208.01, this language was changed by the revisor of statutes to read "on the ground of deliberate, serious, and material violation of the provisions of chapters 200 to 212 or of any other provisions of law relating to nominations and elections." It has remained so since that time.

It would seem that the legislature did not intend to restrict the application of this provision but rather intended to have one single provision deal with commencement of a proceeding by voters or a defeated candidate to determine the eligibility of a person elected to office, not actually involving the regularity of an election itself. That is substantially what we held in Johnson v. DuBois, 208 Minn. 557, 561, 294 N. W. 839, 840, where we said:

"1 Mason Minn. St. 1927, § 488, was adopted without substantial change as Part 7, c. 1, § 7, of c. 345 [L. 1939] [M. S. A. 208.07], * * *. This section authorizes a contest of an election to any state, county, or municipal office *upon the grounds of irregularity in the conduct of the election.*[14] Such a contest may be instituted by any voter, which under the rule of Ekberg v. Jensen, 165 Minn. 116, 205 N. W. 702, includes a defeated candidate.

"1 Mason Minn. St. 1927, § 570, which authorized a contest by 25 voters or a defeated candidate *'on the ground of deliberate, serious and material violation'* of the corrupt practices act, appears in the new law as Part 7, c. 1, § 1 [L. 1939] [M. S. A. 208.01], * * *. This section authorizes contests based on the conduct of candidates in the election." (Italics supplied.)

Much of the confusion which now exists relates to these sections. Now, under M. S. A. 208.01, a proceeding is commenced by filing a petition in the district court of the county in which the candidate whose election is contested resides. Other than that, there is no direction or requirement as to how the voter shall proceed except

[14]We should add "excepting contests involving the determination of which candidate for senate or house of representatives received the highest number of legal votes." Such contests are governed by L. 1939, c. 345, Part 7, §§ 3 to 6, inclusive (M. S. A. 208.03 to 208.06, inclusive), as we have shown above.

470

that the statute provides that "the contest shall be carried on according to law." This section relates to a proceeding commenced to annul an election for violation of the Corrupt Practices Act, as well as other acts of the candidate.

Section 211.35, which deals specifically with violations of the Corrupt Practices Act, provides that any proceeding under the provisions of this chapter[15] contesting any nomination or election—

"* * * *must be commenced within* ten days after the day of the primary or *30 days after a general election,* unless the ground of action is discovered from the statements filed under this chapter, in which event the action must be commenced within ten and 30 days after such discovery, respectively. Any proceeding to annul any nomination or election of any person for office mentioned in this chapter, must be filed in the district court of the county in which the person resides whose right to the nomination, position, or office is contested." (Italics supplied.)

Section 208.07, on the other hand, which deals generally with election contests based upon any irregularity in the conduct of the election, provides that the action shall be commenced by filing with the clerk of the district court of the county of the residence of the contestant, *within ten days after the canvass is completed,* a written notice of contest, specifying the points upon which the contest will be made, and by causing a copy thereof to be served *within said period* upon the contestee and upon the official authorized to issue the certificate of election, when the contest relates to the election of an officer; upon the secretary of state, when it is a matter submitted to popular vote which affects the entire state or any subdivision thereof larger than a county; upon the auditor, when it affects a single county; and in all cases upon the municipality affected.

Section 208.03, which deals with the commencement of a proceeding to contest the *election* of a candidate for the legislature, provides, as we have seen, that service of the notice upon the contestee may be made within five days after the filing with the clerk of the

[15]Which language is taken from Sp. L. 1912, c. 3, § 35.

district court and that service shall be made in the same manner as provided for service of a summons in a civil action.

As we stated above in Saari v. Gleason, 126 Minn. 378, 380, 148 N. W. 293, 294, the term "according to law," as used in § 208.01, means according to the general election law. Other than the time for filing the petition, § 211.35 is silent as to how or when or upon whom notice of a contest involving a violation of our Corrupt Practices Act must be served.

These are the doubts, then, which must be resolved if bench and bar are to know how to proceed in these matters. In the absence of any legislative attempt to clarify these apparently irreconcilable statutory provisions, we shall endeavor to construe them as best we can in the following manner:

(a). Any contest commenced by a candidate for the senate or house of representatives of our state legislature, involving a determination of "which of the parties to the contest received the highest number of votes legally cast at the election, and as to who is entitled to receive the certificate of election" (M. S. A. 208.05), must be brought under §§ 208.03 to 208.06, inclusive, and such statutes provide the exclusive method for instituting and hearing such contests, except insofar as other statutory provisions are expressly adopted therein, and §§ 208.03 to 208.06, inclusive, have no application to contests of any other kind, except as hereinafter stated.

(b). Any contest brought by a voter, including a defeated candidate, to determine *who is elected* to a state, county, or municipal office, or the declared result upon a constitutional amendment or other question submitted to popular vote, *except a contest involving a legislative office* included within paragraph (a) above, or as limited by other statutory provisions,[16] must be brought under § 208.07.

(c). Any contest brought to *contest the election of any candidate based upon the conduct of the candidate,* including a violation of our Corrupt Practices Act, must be brought under § 208.01. The term, "the contest shall be carried on according to law," is construed

---

[16]See, § 200.02 as construed in Johnson v. DuBois, 208 Minn. 557, 294 N. W. 839.

to mean "according to § 208.07," except that, in cases involving violations of our Corrupt Practices Act or any other act wherein express provisions of the statute are contrary to § 208.07, the provisions of the statutes dealing specifically with such cases shall govern over § 208.07. This will mean that, with respect to violations of the Corrupt Practices Act, the time limited for filing the petition with the clerk of the district court is governed by § 211.35 and that, with respect to all other matters concerning the service of notice or other proceedings not specifically provided for in the statutes involved, § 208.07 shall govern.

■ Some question has arisen as to the time and manner of service under § 208.07 and as to what steps are jurisdictional. Here, too, these statutes have had a somewhat dubious history. Prior to L. 1911, c. 59, in order to confer jurisdiction upon the court in an election contest under § 208.07, it was necessary to file *and serve* the notice required by the statute within the ten-day period. R. L. 1905, § 336.[17] This provision was amended by L. 1911, c. 59, so as to provide that "All notices provided for herein shall be served in such manner and within such times as the court may by order direct." Thereafter, only the filing of the notice was jurisdictional.[18] In Walden v. Calef, 119 Minn. 165, 167, 137 N. W. 738, 739, we said:

"* * * Prior to the amendment of R. L. 1905, § 336, by chapter 59, p. 78, Laws 1911, it was necessary, in order to confer jurisdiction upon the court to hear an election contest, to file and also serve the notice of appeal within ten days after the canvass was completed. Odegard v. Lemire, 107 Minn. 315, 119 N. W. 1057. But by the amendment the court acquires jurisdiction of the subject-matter of the appeal upon filing notice of the contest and appeal within ten days after the canvass. Service of the notice on the contestee must be made before the court can proceed to hear and determine the matter; but the statute does not limit the time in which the notice must be served or the proceedings dismissed for want of prosecution.

[17]Odegard v. Lemire, 107 Minn. 315, 119 N. W. 1057.
[18]Strom v. Lindstrom, 201 Minn. 226, 275 N. W. 833.

The time and manner of the service of the notice rest in the sound discretion of the trial court."

L. 1939, c. 345, Part 7, § 7 (M. S. A. 208.07), followed the language of L. 1911, c. 59. It so appeared in M. S. A. 1941, § 208.07. This provision was again amended by L. 1945, c. 229, § 7, so as to require service of the notice *within the same period* as is permitted for filing. This returned the statute substantially to the form it was prior to the 1911 amendment. However, the clause, "All notices provided for herein shall be served in such manner and within such times as the court may by order direct," which came in with the 1911 amendment, was left in the statute as it was amended in 1945. Obviously, both provisions cannot control. In Hunt v. Rolloff, 224 Minn. 323, 28 N. W. (2d) 771, we held that under our present statute both filing and service of the notice within the statutory time is jurisdictional. If that be true, the provision providing that notices shall be served in such time and manner as the court may direct cannot be construed to effect the jurisdictional requirement. The rule that, where two provisions of a statute are irreconcilable, the one later in point of time of passage must govern should be applied here.[19] The later provision should now be construed as if it read: "All notices, *subsequent to the initial notice of contest,* shall be served in such manner and within such times as the court may by order direct."

█ Another troublesome question arises with respect to the *type* of notice which must be served in a proceeding commenced under M. S. A. 208.01.

Section 208.07 requires the filing and service of a *written notice* of contest, specifying the points upon which the contest will be made, and that, when the contestee desires to offer testimony on points not specified in contestant's notice, he shall file and serve on the contestant notice thereof, specifying such additional points. Thereafter, such notices are treated as the pleadings in the case.

Section 208.01 provides that the proceedings thereunder shall be commenced by filing a *petition* in the district court. Obviously, the

[19]M. S. A. 645.26, subd. 4.

*petition,* under § 208.01, serves the same purpose as the *notice* required by § 208.07. In view of the fact that the petition under this section takes the place of the notice in proceedings commenced under § 208.07, we think that service of the petition itself in a proceeding under § 208.01 accomplishes the same purpose as service of the initial notice in proceedings commenced under § 208.07. It follows that the court acquires jurisdiction over the subject matter of a proceeding commenced under § 208.01 upon the filing and service of the petition within the statutory time. Thereafter, the contestee may serve his answer to the petition, and the proceedings then should follow the same course as that provided in § 208.07.

■ The question then remains: Has the legislature conferred upon the courts authority to try and determine a matter of this kind involving an alleged violation of our Corrupt Practices Act? It is apparent that such authority does not exist under §§ 208.03 to 208.06. Section 208.05 provides in part:

"* * * The only questions to be tried by the court shall be as to which of the parties to the contest received the highest number of votes legally cast at the election, and as to who is entitled to receive the certificate of election."

Our first Corrupt Practices Act is found in L. 1895, c. 277. It is clear that this act applied generally to members of the legislature as well as to other officers.[20]

M. S. A. 208.01, which originally was part of the Corrupt Practices Act (Sp. L. 1912, c. 3, § 33), provides that any 25 voters or any defeated candidate may contest the right of *"any* person to nomination, position, or office for which these voters had the right to vote" (italics supplied) for a violation, among other things, of the provisions of the chapter dealing with corrupt practices. As we have shown, the Corrupt Practices Act provides two alternative remedies, one by criminal prosecution and the other by a proceeding to oust the elected candidate. Section 211.36 provides for the disqualification of such candidate from holding the office during the

---

[20]See § 7, which refers specifically to members of the legislature and others.

period fixed by law as the term of such office. Section 211.38 provides that, if a person in a criminal action shall be judged to have violated the act while a candidate for "any office under the constitution or laws of the state, * * * other than the office of state senator or member of the house of representatives, the court shall, after entering the adjudication of guilty, enter a supplemental judgment, declaring such person *to have forfeited the office* in the conduct of the campaign for the nomination or election to which he was guilty of such violation." (Italics supplied.) With respect to a candidate for the office of state senator, a member of the house of representatives, United States senator, or representative in Congress, the statute provides that, after entering such adjudication, the court shall "forthwith transmit to the presiding officer of the legislative body as a member of which such officer was a candidate when such violation occurred, a certificate setting forth such adjudication of guilty."

While the statutes contain no specific provision as to what procedure shall be followed in a proceeding commenced by voters or a defeated candidate to oust the elected person, we think that it is clear that the legislature intended M. S. A. c. 211 to include members of our legislature under both alternative remedies; that is, the criminal prosecution provision and the provision for bringing a proceeding to oust such candidate by a voter. It is hardly likely that the legislature would have excluded its own members from the consequences of a violation of the Corrupt Practices Act.

■ While it might have been better if the legislature had prescribed definite directions as to how to proceed, in the absence of such specific directions we construe the words "the contest shall be carried on according to law," when applied to a proceeding commenced under § 208.01 to oust a person elected to the state senate or house of representatives for a violation of the Corrupt Practices Act, to mean according to § 208.05. The court should make findings of fact as in other cases and, in case of an ouster, the person so ousted may appeal to this court or either party may, on application, have all the files and records, including the evidence, transmitted to the proper house of the legislature.

Under the provisions of § 208.01, that proceedings subsequent to the filing of the petition shall be carried on according to law, the trial of the action is governed by § 208.07,[21] which provides that "the testimony shall be taken, and the matter tried and determined, in the same manner as such actions are tried by the court, at a general or special term."

In Whaley v. Bayer, 99 Minn. 397, 399, 109 N. W. 596, 820, we said:

"* * * Jurisdiction to hear an election contest * * * is expressly conferred upon the district court. It is true that the legislature has not designated the manner in which such a contest shall be heard in the district court, but when jurisdiction over a subject-matter is conferred upon a court, and the details of the procedure are not provided for, the court will establish and adopt such procedure as is necessary to render the grant of jurisdiction effective."

To the extent that the election law establishes procedure which may be adopted it should be followed. Where there is no law, the general rules applicable to trial of civil cases should be followed.

Contestee next contends that service was insufficient for the reason that it was not made on him personally. We see no merit to this contention. Substituted service upon a person of suitable age and discretion in the house of usual abode was deemed personal service under M. S. A. 149, § 543.05, and is also under Rules of Civil Procedure, Rule 4.03. In the absence of a specific statutory requirement to the contrary, service in the manner of service of a summons should be deemed sufficient. That is all the legislature has required in cases brought under § 208.03, et seq.

In view of our decision that § 211.35 governs as to time of filing and service, it follows that service upon the county auditor was sufficient also. Service upon the deputy county auditor was sufficient to comply with the requirement of service on the auditor.

[21]See, Hanson v. Emanuel, 210 Minn. 51, 297 N. W. 176.

■ Finally, contestee contends that the court lacks jurisdiction because the court's order setting the case for hearing failed to state the place of the hearing. In the view we take of it, the service and filing of the petition were sufficient to comply with the jurisdictional prerequisites. The court's order can be amended if necessary. Furthermore, the legislative district involved is coextensive with Cass County. There is, and always has been, only one courthouse in Cass County. Contestee, with his attorney, appeared at the hearing, so he cannot claim that he was misled. While the order is carelessly drawn, we do not think that it is jurisdictional nor has contestee been prejudiced in any way.

It follows that the petition was timely filed and served under applicable laws. The court has jurisdiction to hear and try the claims set forth in the petition and should do so. Consequently, it was error to dismiss the petition.

Inasmuch as this case involves the right of a member of our present legislature to be seated, it should now be set for trial at the earliest possible moment and expeditiously tried so that final action may be taken by the legislature without delay.

Reversed.