FRANK V. MOULTON v. JACK NEWTON.

144 N. W. (2d) 706.

August 12, 1966—Nos. 40,059, 40,164.

---

to a residence employee whose duties are performed elsewhere or on "any other premises."

546

*William L. Phillips, Theodore Wangensteen, Thor H. Anderson, George A. French,* and *David W. Nord,* for appellant.

*Leonard, Street & Deinard* and *Melvin H. Siegel,* for respondent.

SHERAN, JUSTICE.

Consolidated appeals from the order for judgment and the judgment of the Hennepin County District Court. The matter before us concerns an election contest instituted by contestant, Frank Moulton, seeking reelection, against contestee, Jack Newton, winner of the general election for alderman of the 10th ward in the city of Minneapolis. The election occurred June 8, 1965. Contestant claims the election should be nullified because: (1) The contestee failed to make timely filing of financial statements as required by Minn. St. 211.20, subds. 2 and 4;[1]

---

[1] Minn. St. 211.20, subd. 4, provides in part: "Every candidate * * * shall file a financial statement as follows:

"(a) Seven days before the primary;

"(b) Seven days after the primary;

"(c) Seven days before the regular or special election; and

"(d) Seven days after the regular or special election."

(2) the city clerk unlawfully, in violation of Minn. St. 211.22,[2] caused contestee's name to be printed on the general election ballot; and (3) contestee, in violation of § 211.08,[3] published and circulated campaign literature containing statements concerning contestant either false or giving false impressions, which statements were known to be false or were made without adequate investigation and which tended to affect the fair and free expression of the voters. Contestant contends that such failures and publication of false statements constitute irregularities in the conduct of the election and are deliberate, serious, and material violations of the Minnesota election laws.[4]

---

[2] Minn. St. 211.22 provides: "The name of a candidate chosen at a primary election, or otherwise, shall not be printed on the official ballot for the ensuing election, unless there has been filed by or on behalf of the candidate and by his personal campaign committee, if any, the statements of accounts and expenses relating to nomination required by this chapter."

[3] Section 211.08 provides: "Any person or committee who shall publish, issue, or circulate, or cause to be published, issued, or circulated, otherwise than in a newspaper, as provided in section 211.03, any literature or any publication tending to influence voting at any primary or election which fails to bear on the face thereof the name and address of the author, the name and address of the candidate in whose behalf the same is published, issued, or circulated, and the name and address of any other person or committee causing the same to be published, issued or circulated, and any person, firm, corporation or committee who shall knowingly make or publish or cause to be published, any false statement in relation to any candidate or proposition to be voted upon, which statement is intended to or tends to affect any voting at any primary or election, shall be guilty of a misdemeanor; provided, nothing herein contained shall be construed as modifying or repealing any of the provisions of section 211.10."

[4] Section 209.02, subd. 1, provides: "Any voter, including a candidate, may contest the nomination or election of any person for whom he had the right to vote, who is declared nominated or elected to a state, county, legislative, or municipal, or district court office, or the declared result of a constitutional amendment or other question voted upon at an election by proceeding as provided in this chapter. The contest may be brought over an irregularity in the conduct of an election or canvass of votes or on the grounds of deliberate, serious, and material violations of the provisions of the Minnesota election law."

The facts upon which the contestant seeks to support his claims are that contestee, after filing a financial statement 7 days before the primary election recording a $10 filing fee (apparently his only campaign expense), thereafter filed no statements until his attention was directed to his omissions by contestant's amended notice of contest, whereupon the missing statements were filed on June 24, 1965. In the course of the campaign, contestee received five to ten checks made out to his name, which he promptly endorsed over to his volunteer committee for the reason, as he testified, that the checks were intended for the committee but were mistakenly made payable to him. These checks were then included in financial statements duly filed by the committee. Additionally, in the course of the campaign, contestee's volunteer committee prepared and distributed literature containing statements criticizing contestant for his actions while in office with respect to residential street paving, urban renewal, zoning ordinance, freeway planning, auditorium expansion, and further criticizing him for maintaining two "homes" (one outside his ward) and in dividing his time and effort between aldermanic and extra-aldermanic duties.

Upon findings that contestant failed to prove any campaign statement to be false; that such statements were "essentially true" and "constituted fair political comment on the issues of the campaign"; and that contestee's "candidacy and election were free from offensive or illegal acts," the court dismissed contestant's petition.

■ We have carefully examined the voluminous record and comprehensive briefs and are persuaded that the judgment must be affirmed.

Minn. St. 209.02, subd. 1, sets forth two grounds for an election contest: (1) "[A]n irregularity in the conduct of an election" by election officials, and (2) "deliberate, serious, and material violations" of any of the election laws by a candidate.[5] To sustain a charge that contestee failed to make a timely filing of financial statements, contestant must show that such omissions were "deliberate, serious, and material violations of the provisions of the Minnesota election law."[6]

---

[5] See, Johnson v. DuBois, 208 Minn. 557, 294 N. W. 839.

[6] See, Phillips v. Ericson, 248 Minn. 452, 469, 80 N. W. (2d) 513, 524.

In determining the merit of contestant's claims the trial court may find, pursuant to § 211.34, that from the evidence it appears—

"* * * the offenses complained of were trivial or unimportant * * * [and] arose from accidental miscalculations or from some other reasonable cause of like nature * * * and under the circumstances it seems to the court to be unjust that the candidate shall forfeit his nomination, position or office * * *."

Such a determination is implicit in the finding made here by the lower court. We have said before that the trial court is vested with—

"* * * considerable discretion in determining whether violations of the act are trivial or unimportant and * * * [u]nless it appears that there has been a clear abuse of discretion we should not reverse merely because it appears that there has been a violation which is technical rather than real." [7]

Applying this test, we cannot find that there was a "clear abuse of discretion" in the lower court's determination. Certainly the failure to timely file the financial statements was a trivial omission when we consider that contestee's volunteer committee recorded and filed all the information that should have been included in his financial statements. The five or ten checks which contestee turned over to his committee were included in its unchallenged report thus refuting any inference from contestee's failure to properly file financial statements after the primary and before the election that he was motivated by a desire to fraudulently conceal income and expenditures and thus affect the fair and free expression of the will of the voters.

Contestant relies on Dale v. Johnson, 143 Minn. 225, 173 N. W. 417. That case concerned only the scope of mandamus and not the merits of an election contest. There, the county auditor refused to issue a certificate of election to the winning candidate because no financial statements had been filed. The statute then, as now,[8] made it

---

[7] See, Bank v. Egan, 240 Minn. 192, 200, 60 N. W. (2d) 257, 262.

[8] Section 210.20 provides: "Every candidate for nomination or election to any elective office, who fails to make and file the verified statement of

a criminal offense for the auditor to issue a certificate under those circumstances. In a mandamus proceeding brought by the prevailing candidate to compel issuance of the certificate, we held merely that *the scope of mandamus would not permit us to counter an adminis-trative decision refusing to issue the certificate where to do so would* result in our compelling an administrative officer to "violate the crimi-nal laws of the state." 143 Minn. 226, 173 N. W. 418.

We have consistently held that the jurisdiction of the court in an election contest is solely statutory.[9] Accordingly, we hold that where an election certificate is issued administratively despite noncompliance with the requirements of filing financial statements, the court has no power to annul the election absent proof establishing a "deliberate, serious, and material" violation of the election laws by the contestee.

■ We do not agree with contestant's claim that the city clerk's *wrongful entry of contestee's name on the ballot, in violation of* § 211.22, constitutes an "irregularity in the conduct of the election" requiring this court to declare contestee's election void. We have said before that—

"* * * after a fair election is held and the results ascertained, mere irregularities in following statutory procedure will often be overlooked. * * *

* * * * *

" 'It is the general rule that, *before an election is held,* statutory pro-visions regulating the conduct of the election will usually be treated as mandatory and their observance may be insisted upon and enforced. *After an election has been held,* the statutory regulations are generally construed as directory and such rule of construction is in accord with

---

moneys contributed, disbursed, expended, or promised by him, or by any other person, committee, or organization for him, so far as he can learn, in the manner, within the time, and with the details required by law, or who enters upon the duties of any such office, or receives any salary or emolu-ment therefrom, before he has so filed such statement, and every officer who issues a commission or certificate of election to any person before such statement shall have been so filed, shall be guilty of a gross misdemeanor."

[9] See, Franson v. Carlson, 272 Minn. 376, 137 N. W. (2d) 835.

the policy of this state, which from its beginning has been that, in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequence of invalidity.' " [10]

There is no showing here that the specific statutory provision is an "essential jurisdictional prerequisite." The trial court found "there was no fraud or bad faith, and there was no constitutional violation." In our opinion the evidence supports this finding.

■ Finally, we must refuse contestant's claims in regard to the campaign statements included in literature prepared and disseminated by contestee and his volunteer committee. No purpose will be served by reviewing each statement individually. The exhaustive memorandum of the trial court treats all of contestant's specific claims and fully satisfies us that the evidence supports the findings that the statements were made in good faith after adequate investigation; were proper campaign comments; and were essentially true. It is significant, as the trial court observed, that *while the campaign was in progress,* the contestant did not publicly assert the falsity of the statements which he now contends should invalidate the election.

Affirmed.

---

[10] In re Application of Andersen, 264 Minn. 257, 267, 119 N. W. (2d) 1, 8.