STATE *ex rel.* ANGUS HAINES *vs.* D. B. SEARLE, *Judge District Court, Seventh Judicial District.*

Argued Dec. 19, 1894.   Writ granted Dec. 28, 1894.

No. 9294.

Election Law of 1893 construed.

> *Held,* that Laws 1893, ch. 4, § 188, providing for the appointment of three persons to examine and inspect the ballots cast at a general election, applies to contests for legislative offices.

Laws 1893, ch. 4, § 188, is not in conflict with the constitution.

> Also, that it is not in conflict with Constitution, Art. 4, § 3, providing that each House shall be the judge of the election of its own members.

Certiorari to review a refusal of the District Court.

> Also, that *certiorari* will lie to review the action of the District Court in refusing to appoint persons to examine and inspect the ballots.

At the general election held November 6, 1894, in the third legislative district of Stearns county, a part of the forty fifth senatorial district, Angus Haines, a republican, and Alexander Chisholm, democrat, were opposing candidates for election to the House of Representatives. The canvassing board of Stearns county declared Chisholm elected by a plurality of four votes and issued to him the certificate of election. Haines instituted a contest and on December 8, 1894, applied to D. B. Searle, one of the Judges of the District Court for the seventh judicial district, for an order under Laws 1893, ch. 4, § 188, appointing three persons to whom an inspection of the ballots cast should be referred. Notice was given Chisholm and after hearing the parties and their counsel the Judge on December 12, 1894,

refused the application on the ground that this section of the statute does not apply to a contest for a legislative office, citing *State ex rel.* v. *Peers,* 33 Minn. 81.

On December 19, 1894, Haines, the contestant, by his counsel presented in this court his relation of these facts and asked that a writ of *certiorari* be issued to the District Court to certify and return to this court the petition, papers and proceedings to the end that this court may consider and cause to be done what of right ought to be done in the premises. Chisholm appeared by his counsel and opposed. The court after hearing argument granted the writ.

*Frank Tolman,* and *Taylor, Calhoun & Rhodes,* for relator.

*Geo. H. Reynolds,* for respondent.

MITCHELL, J. The principal question presented is whether the provisions of Laws 1893, ch. 4, § 188, apply to contests for legislative offices; the contention of the contestant being that they do, while the contestee claims that they apply only to contests that are triable in the District Court. The section reads as follows:

"After any contest has been instituted, either party to the contest shall have the right to have the ballots referred to inspected for the purpose of enabling him to prepare his contest for trial; and, upon application by such party to the District Court upon a verified petition, stating that he cannot prepare his case for trial without an examination and inspection of the ballots cast at the preceding election, the Judges of said court shall appoint three persons, one to be selected by each of the parties to the contest, and these to select a third, to whom the inspection and examination of said ballots shall be referred. Provided, that said inspection and examination shall be had and conducted in the presence of the proper custodian of the ballots and provided further that the party making such application shall file with the clerk of the District Court a bond in the sum of two hundred and fifty dollars, with two sureties, to be approved by the Judge of said court, conditioned that he will pay the cost and expense of such examination and inspection, in the event that he shall fail to maintain his contest. Should either party to the contest neglect or refuse to name the persons to whom said inspection shall be referred, on his part, such person shall be selected and appointed by the Judges of the District Court to whom the application is made."

An examination of the act will show that sections 181 to 184, inclusive, refer to contests for legislative offices, and sections 185 to 187 to contests for city and county offices. Then follow the section quoted and section 189, which last is, by its terms, applicable to contests for any office, legislative included. The next two sections (190 and 191) apply to the elections for the removal of county seats, the change of county lines, or upon any other subject submitted to a vote of the people. Section 192 is a general one, applicable alike to all contested elections. From this analysis of the structure of the act it is evident that section 188 must either be held applicable to all election contests, or else construed as referring exclusively to the subject-matter of the three preceding sections, and hence applicable only to contests for city and county offices. It can hardly be supposed that the legislature contemplated so restricted an application of so convenient and fair a method of inspecting and examining the ballots. There is no reason, in the nature of things, why it should be limited to contests for city and county offices. The fact that the provisions of the next section are applicable to all contests for any office tends strongly to indicate that these two sections were both intended to be of general application, although interjected between those referring exclusively to contests for city and county offices and those referring to contests over the removal of county seats, etc.

It is suggested that the use of the word "trial" in section 188 indicates that its provisions were intended to apply only to contests to be tried in court. Any force that there might otherwise be in this suggestion is entirely counteracted by the fact that the same word is used in section 189, where it evidently includes "trials" in the legislature as well as in the courts. It is also urged that the provision that the applicant shall file with the clerk of the court a bond conditioned to pay the expense of examining and inspecting the ballots in the event that he fails to maintain his contest indicates that the section was intended only to apply to contests triable in courts. We do not think that there is much, if any, force in this suggestion. The examination of the ballots is usually somewhat expensive, and it is a matter of common knowledge that it is very often a mere "fishing" expedition on part of the applicant. We think it was these considerations which principally influenced the legislature in requiring a bond from

the applicant; and these considerations apply to contests for legislative offices as much as to any other election contest.

There is no force in the suggestion that, as thus construed, the act is in conflict with the Constitution, Art. 4, § 3. It in no way interferes with the right of the legislature to judge of the election of its own members any more than would a law providing for the taking of depositions to be used on the trial of the contest before that body. It binds nobody and determines nothing. The whole matter is still with the legislature, who can receive or reject the evidence secured by the inspection and examination of the ballots, and, if they receive it, give it only such weight as they see fit. It is merely a convenient method of preparing or securing evidence in advance of the meeting of the legislature, instead of waiting until that body convenes; and it no more interferes with its constitutional right to judge of the election of its own members than does the law requiring the board of canvassers to give a certificate of election to the candidate receiving the highest number of votes. See *O'Ferrall* v. *Colby*, 2 Minn. 180, (Gil. 148.) There is nothing in *State ex rel.* v. *Peers*, 33 Minn. 81, (21 N. W. 860,) in conflict with this view. This law, as we have construed it, is a provision enacted by the legislature itself for securing or preparing evidence to be used on the trial of the contest; and, as said in the case last cited, the House may reject it altogether, and provide, if they see fit, for the re-examination of the ballots in some other way. In appointing persons to examine the ballots, the court, so far from interfering with the constitutional right of the legislature, is but carrying out its directions. The action of the court in appointing these persons is at least *quasi* judicial. As the trial of the contest is before the legislature, and not the court, no appeal will lie from the refusal of the court to make the appointment. Therefore we think certiorari will lie. Let the writ issue.

(Opinion published 61 N. W. 553.)