## HOWARD Y. WILLIAMS v. MELVIN J. MAAS.[1]

December 23, 1936.

No. 31,243.

*George B. Leonard, Marshman Wattson,* and *Solly Robins,* for contestant-relator.

*Otis, Faricy & Burger* and *Bundlie, Kelley & Finley,* for contestee-respondent.

[1]Reported in 270 N. W. 586.

JULIUS J. OLSON, JUSTICE.

*Certiorari* to review an order made by the district court of Ramsey county dismissing an appeal by relator taken from the result declared by the canvassing board of said county on November 6, and by the state canvassing board on November 17, 1936, both of said boards finding, declaring, and certifying that Melvin J. Maas had been elected to congress at the November 3 general election from the fourth congressional district. The court in dismissing relator's appeal did so because it was of opinion that it had no jurisdiction of the subject matter involved.

At the election referred to there were four candidates for this office. The votes as counted, returned, and canvassed were certified to be as follows: For Maas, Republican (contestee) 48,399; for Williams, Farmer-Labor (contestant) 48,039; for Doherty, Democrat, 28,957; and for Luce, nominated by petition, 932. Relator in his notice of contest claims that the canvassing boards mentioned have, "through mistake and inadvertence" in the various election districts, "returned or canvassed as votes for" the successful candidate that should have been counted for relator; that at said election "at least ten legal votes and ballots which through mistake and inadvertence" in each of the 249 election districts of said Ramsey county were so erroneously counted for Mr. Maas when in fact these ballots were cast, and should have been counted, returned, and canvassed, for relator; that by reason of such errors and others of similar nature the true result of that election has not been ascertained or declared.

It thus appears that an election was duly had and that the canvassing boards have declared the result.

An issue similar in every essential respect was before this court in State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 212 N. W. 604. There the unsuccessful candidate claimed that respondent Selvig, during his campaign for election, had published and circulated untrue statements concerning his opponent. Thus the qualification of the successful candidate was sought to be made an issue before our courts. It was held that the determination of the qualifications of senators and representatives in congress is entirely within the

jurisdiction of each of said bodies by reason of U. S. Const. art. I, § 5, which provides: "Each house shall be the judge of the elections, returns and qualifications of its own members." "This provision," said the court, "gives the House of Representatives exclusive jurisdiction to determine whether the respondent is or is not disqualified from becoming a member of that body." (Citing many cases, 170 Minn. 407.) In consequence, the court concluded: "Any judgment rendered by the court upon that question would be both officious and nugatory." This being true in a case involving the *qualification* of a member, must not the same result necessarily follow where the question is whether the contestee has received a greater number of votes than his opponent? If this court was right in the Selvig case (and we entertain no doubt that it was), then clearly the court below was right in dismissing relator's appeal. In that case the issue respecting the qualifications of Mr. Selvig arose by virtue of his alleged violation of our statutes relating to corrupt practices. 1 Mason Minn. St. 1927, §§ 538-601. By virtue of the cited statute our state had created certain standards of conduct, violation of which might, upon adequate proof, result in forfeiture of office (§ 573) or even criminal punishment (§ 575) as to one who had so violated its provisions. Surely, if inquiry by our courts into such violation was not permitted by reason of the quoted section of the constitution, there can in reason and logic be no room to doubt that we may not now entertain jurisdiction of the issue here presented. Nor is there any doubt that counsel for petitioners in the Selvig case emphatically called the attention of this court to this issue. The following quotation from page 3 of his brief lucidly states the basic reasons upon which reliance was placed:

"Congress has left the matter [respecting corrupt practices] as a proper subject to be dealt with by the states, recognizing the fact that the states are 'imperium in imperio' and have the full power and authority to deal with the questions of elections and that the vigilance and diligence of the respective states result to the benefit of the Federal Government as well as the respective states them-

selves. Not only has Congress passively and tacitly recognized that fact by failing to pass laws specifically regulating elections for members of Congress in the past, but the recent Federal Corrupt Practices Act, which was approved February 28th, 1925, expressly recognizes the laws of the respective states:

" 'Section 316. This chapter shall not be construed to annul the laws of any State relating to the nomination or election of candidates, unless directly inconsistent with the provisions of this title, or to exempt any candidate from complying with such state laws.' [See 2 USCA, c. 8, § 254.]

"It is the contention of the relators in this action that the enactment of the Federal Government, as set forth above, not only recognizes the validity of the state laws, but really in fact makes them a part of the law of the United States relating to elections of Congressmen. In fact it is fair to say that in the enactment set forth above they took judicial notice, if that term may be properly applied to a legislative body, of the corrupt practices laws of the State of Minnesota and other states, and considered them as salutary measures from which Congress itself would derive benefit in the election of its members." (The federal corrupt practices act is found in 2 USCA, c. 8, §§ 241 to 256, inclusive.)

But, relator asserts, the election machinery is our own, and the matter of counting, canvassing, and returning the votes are but ministerial steps in the process of the election; that the duty of passing upon the validity and regularity of these matters is a state, not a federal, function. He freely grants, however, that whatever we may do in the premises is not binding upon the national house of representatives, but is advisory only. In support he cites State ex rel. Haines v. Searle, 59 Minn. 489, 61 N. W. 553, 554. There the court was called upon to determine whether L. 1893, c. 4, § 188, was applicable to legislative offices. The holding was that the act applied. The court said (59 Minn. 492) :

"This law, as we have construed it, is 'a provision enacted by the legislature itself for securing or preparing evidence to be used on the trial of the contest; and, as said in the case last cited, the House

may reject it altogether, and provide, if they see fit, for the re-examination of the ballots in some other way. In appointing persons to examine the ballots, the court, so far from interfering with the constitutional right of the legislature, is but carrying out its directions."

The vital distinction between that case and this is obvious. There legislative grant of judicial jurisdiction had been provided. Here it is wholly lacking. The congress has not given to any state or to any court any authority whatsoever of the kind or type mentioned and applied by the court in the cited case. Instead, by 2 USCA, c. 7, under the heading "Contested Elections" (§§ 201 to 226, inclusive), there is provided the mechanics for determination of issues.

"Whenever any person intends to contest an election of any Member of the House of Representatives of the United States," etc. (§ 201).

The manner of procedure is there outlined and defined. Adequate provision is made for compelling attendance of witnesses, their examination and the preservation of their testimony, the production of papers and documents, etc.,—in fact every conceivable means for ascertaining the full and true facts involved in the issues made by and between the contending forces is amply provided for. Undoubtedly relator has taken adequate steps under and pursuant to that chapter to protect all his rights and interests. So he is obviously not without adequate legal means to protect his rights. Remedies are available. Contested elections of the type here involved are not new to congress, and undoubtedly ample precedents are available for his guidance. If the question were new, which it is not, there is much in relator's argument of appealing force.

We think the authorities cited by this court in the Selvig case are determinative of result here. We have not overlooked People ex rel. Brown v. Board of Supervisors, 216 N. Y. 732, 110 N. E. 776. Insofar as that case is out of line with what we have heretofore held and determined, we do not choose to follow it. It is to be noted also that this case was decided in December, 1915. The Selvig case

was decided March 4, 1927; hence more than 11 years had gone by. That case not having been followed then is not persuasive now.

In addition to the authorities cited by Judge Taylor in the Selvig case, the following are helpful: Dingeman v. State Board of Canvassers, 198 Mich. 135, 164 N. W. 492; 1 Cooley, Constitutional Limitations (8 ed.) p. 270; 1 Story on the Constitution, § 833. And in 1 Kent's Commentaries (13 ed.) p. 255, it is said:

"Each house is made the sole judge of the election return and qualifications of its members. * * * The same power is vested in the British House of Commons, and in the legislatures of the several states; *and there is no other body known to the Constitution, to which such a power might safely be trusted.*" (Italics supplied.)

What the court said in the Dingeman case, 198 Mich. 135, 139, 164 N. W. 492, 494, we think truly expresses the law:

"Running through all these cases is the rule, to my mind clear and distinct, that wherever by the organic law, whether Federal, State, or municipal, a tribunal is created to finally determine the right to an office, that tribunal is exclusive, and there, and there only, may the right of the office be tested."

Writ discharged and order dismissing appeal affirmed.

MR. JUSTICE PETERSON took no part, being disqualified by reason of prior consideration of this matter while attorney general.