ROBERT J. ODEGARD v. ALEC G. OLSON.

119 N. W. (2d) 717.

January 22, 1963—No. 38,950.

*Fred J. Hughes*, for petitioner.

*Hulstrand, Langsjoen & Anderson*, for respondent Olson.

*Walter F. Mondale*, Attorney General, and *John F. Casey, Jr.*, Assistant Attorney General, for secretary of state.

MURPHY, JUSTICE.

Upon petition of the relator, Robert J. Odegard, we issued a temporary injunction and order to show cause directed to Joseph L. Donovan, secretary of state of the State of Minnesota, requiring

that he appear and answer the relator's petition, which seeks to enjoin and restrain the secretary of state from issuing a certificate of election to the respondent, Alec G. Olson, who was the apparent winner of an election contest for the office of representative to United States Congress from the Sixth District of Minnesota in the November 6, 1962, election. On the return date the secretary of state appeared, together with the candidates and their counsel; and after hearing arguments we made an order vacating the injunction or restraining order and denying the relief asked for by the relator.

Before giving the reasons for our decision a preliminary statement of the issues should be made. The relator, the Republican candidate for representative from the Sixth Congressional District, received at the November 6, 1962, general election 76,962 votes—348 votes less than the 77,310 votes cast for the respondent, the Democratic-Farmer-Labor candidate. It is conceded that the relator has duly commenced proceedings to contest the election pursuant to 9 Stat. 568 (1851), Rev. Stat. § 105, 2 USCA, § 201, the exclusive avenue open to him to contest the seating of his opponent in Congress. The contest proceedings by the appropriate congressional committee either have begun or will shortly begin. The relator asks that pending the final determination of the outcome of this contest the secretary of state should be restrained from issuing to the respondent a certificate of election as provided by Minn. St. 204.32, subd. 2. Our decision must turn upon the interpretation of this particular provision, which reads as follows:

"The auditor of any county and the secretary of state may not issue a certificate of election to any person declared elected by the canvassing board of the county or the state canvassing board until 12 days after the canvassing board has canvassed the returns and declared the result of the election. In case of a contest, the certificate may not be issued until the proper court has determined the contest."

The relator ably contends that the secretary of state is prevented from issuing the certificate because a contest has been instituted and that the issuance must await the result in the House of Representatives,

which he asserts is, within the meaning of the statute, "the proper court" to determine the contest.

1. It is unnecessary to set out the various grounds upon which the relator seeks to prevail in the contest before the House of Representatives. The issues thus raised are not before us. While the state legislature may regulate the conduct of elections subject to the limitations expressed in U. S. Const. art. I, § 4, it should be conceded that under the provisions of art. I, § 5, each house of Congress is the sole judge of the election returns and qualifications of its members, exclusive of every other tribunal, including the courts. Youngdale v. Eastvold, 232 Minn. 134, 44 N. W. (2d) 459; State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 212 N. W. 604; Williams v. Maas, 198 Minn. 516, 270 N. W. 586; Danielson v. Fitzsimmons, 232 Minn. 149, 44 N. W. (2d) 484. See, also, 54 Am. Jur., United States, § 17; Annotation, 107 A. L. R. 205.

2. The relator does not quarrel with the foregoing authority. By his brief he argues, "This proceeding seeks only to prevent the Secretary of State from performing a ministerial act, issuing a certificate of election, in a case where he is, by Minnesota statute, specifically forbidden so to do." He further argues that, since he has duly instituted the proceedings to contest the election of his opponent, the secretary of state must under the provisions of Minn. St. 204.32 refrain from issuing the certificate of election until that contest is resolved.

In considering the merits of the relator's argument, it is necessary to view § 204.32 with other sections of our statute which relate to the mechanics of determining the election of the successful candidate. Section 204.31, subd. 3, provides in part:

"After the general election, the canvassing board shall canvass the certified copies of the statements made by the county canvassing boards, and they shall prepare therefrom a statement of the following information:

"(a) A statement of the whole number of votes counted for candidates for state offices, congressional offices, and such other

candidates as shall be voted for in more than one county, specifying the several counties in which they were cast."

Subd. 4 thereof provides:

"All members of the state canvassing board shall subscribe their names to the statement and certify to its correctness; and within three days after the completion of the canvass, the board shall declare the result."

Section 204.32 prescribes the duty of the county auditor, or the secretary of state in the case where the candidate for office is voted for in more than one county, to issue the certificates of election to the candidates certified by the state canvassing board to be the victors. Subd. 1 reads in part:

"The auditor of each county, and the secretary of state where the candidates for office are voted for in more than one county, shall make for every person elected a certificate of his election and deliver the certificate to the person entitled thereto upon demand, and without fee."

Subd. 2 thereof,[1] previously quoted, operates as a limitation upon the general provision enunciated in subd. 1.

After carefully examining these statutory provisions, we must come to the conclusion that § 204.32, subd. 2, has no application to a contest in the United States Senate or House of Representatives. Our courts are divested of jurisdiction by U. S. Const. art. I, § 5, which provides: "Each house shall be the judge of the election returns and qualifications of its own members, * * *." The determinative fact in the mechanics of this particular election is the act of the state canvassing board in declaring the election of the respondent pursuant to

---

[1] L. 1945, c. 229, § 3, added: "In case of a contest, the certificate shall not be issued until the *district court* has determined the contest." (Italics supplied.) The law was repealed by L. 1959, c. 675, art. 13, § 1. It was reenacted by art. 5, § 32, subd. 2, of that act to read *proper* court instead of *district court*. There is no legislative history to enlighten us as to why that change was made. There is no doubt as to the meaning prior to the 1959 act since until then it specifically related to contests in the district court.

authority of that board under Minn. St. 204.31, subds. 3 and 4. The certificate of election as provided by § 204.32 has no greater significance than a publication by the secretary of state of the official action taken by the canvassing board. The effect of any order of this court enjoining the secretary of state from performing the ministerial function of furnishing respondent a certificate of election would be gratuitous and of no force as bearing upon the merits of the election contest pending in the House of Representatives. It would, as expressed in State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 408, 212 N. W. 604, be "officious and nugatory." The contest is pending in a forum, the jurisdiction of which this court is bound to respect. The House of Representatives may seat members elected without a certificate, just as it might refuse to seat members who have a certificate, if it chooses to do so.[2] Since the House of Representatives is the final and exclusive judge of the legality of election or qualification of its members, this court should not gratuitously issue a prerogative writ which might be considered a tactical advantage for one or the other candidate.

That the term "contest" as used in the last sentence of § 204.32, subd. 2, does not comprehend a contest pending in the United States House of Representatives is further apparent from an examination of c. 209, which deals with the subject of election contests. It is significant that in providing for the ground rules for election contests in this state the legislature has provided authority in § 209.02, subd. 1, to contest elections to "a state, county, legislative, or municipal, or district court office, or the declared result of a constitutional amendment * * *." The law as it now exists does not include a contest for the office of a member of the United States Congress.[3]

[2]Keogh v. Horner (S. D. Ill.) 8 F. Supp. 933.

[3]The legislative interim commission on election laws commented (Report of the Interim Commission on Election Laws, 1961, p. 15, Minnesota Election Laws, 1962 ed. p. 155):

"Under existing law there are at least three different procedures applicable to commencing an election contest by court action. The way to begin a contest depends largely on the grounds for contest and the kind of office in question. A prospective contestant who chooses the wrong procedure

We are accordingly of the view that the provision relating to "contest" incorporated in § 204.32 refers solely to contests initiated pursuant to the general election laws of this state and is not applicable to a contest in the House of Representatives in Congress. We are of the further view that the term "proper court" in the same section applies to the state court which is given jurisdiction under c. 209 and does not include the Congress of the United States.

The relator's petition for writ or order restraining the secretary of state from issuing a certificate of election to the respondent was properly denied by the order of this court dated December 4, 1962.

Writ vacated.

KNUTSON, CHIEF JUSTICE (concurring specially).

I concur in the result.

Inasmuch as I was the author of the court's opinion in Youngdale v. Eastvold, 232 Minn. 134, 44 N. W. (2d) 459, which stated among other things that (232 Minn. 139, 44 N. W. [2d] 462) "our courts have no jurisdiction over the election of representatives to congress," I feel that some explanation of my present views are in order. That statement was taken largely from Williams v. Maas, 198 Minn. 516, 270 N. W. 586, and State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 212 N. W. 604. Read literally, it is too broad a statement.

U. S. Const. art. I, § 4, which provides that the "times, places and manner of holding elections for senators and representatives shall

---

finds that he is prevented from carrying on the contest. The amendment [Minn. St. 209.02] provides one uniform way of commencing a contest which is applicable whether the grounds relate to misconduct on the part of the candidate or his agents, or to a question over who received the most votes, and also to all kinds of offices. The notice of contest, manner of service, time of commencement, place of action, as well as what is sufficient to confer jurisdiction upon the court to determine the contest, are all provided for in the amendment. It is important to keep in mind that while one procedure would govern all contests, in the case of contests over legislative offices the courts are limited by a subsequent section because by provision of the constitution, the legislature is the final judge over the election of its members. *The contest law does not apply for similar reasons to final elections in the case of congressional offices.*" (Italics supplied.)

be prescribed in each state by the legislature thereof," clearly grants to the states the power to prescribe the manner of *electing* Senators and Representatives to Congress. This right, however, is circumscribed by art. I, § 5, which reads in part: "Each house shall be the judge of the election returns and qualifications of its own members." By legislation, Minnesota, as well as every other state of the Union, has provided the machinery for electing members of Congress. In view of that fact, it is not accurate to say that we have no jurisdiction over elections. It is more proper to say that the states have been given the authority to prescribe all steps necessary to complete the elective process, subject to the overriding power of Congress to determine who has been properly elected and to refuse to seat one who is determined not to have been properly elected. Within the scope of the elective process, our legislature could have provided for a recount of the votes under supervision of our courts when the original tabulation was questioned by one of the candidates. If it had done so as part of the elective process, as many of the other states have done, we do not doubt that Congress would accept the final tally of the vote after a recount as well as it would accept the original tally without a recount.

In the Youngdale case we said (232 Minn. 139, 44 N. W. [2d] 462):

"The authority of courts to entertain election contests is purely statutory. Absent statutory authorization, the courts are without jurisdiction to determine election contests. * * * If the statutes do not authorize the courts to entertain election contests for the office here involved on the ground and for the reasons alleged in contestant's petition, the court has no jurisdiction over the subject matter."

What we really held in the Youngdale case may be found in the following part of our opinion (232 Minn. 144, 44 N. W. [2d] 464):

"We come therefore to the conclusion that there are no statutory provisions authorizing our courts to entertain contests involving the nomination or election to the office of representative in congress for mere errors in counting the ballots, and that the petition before us is insufficient to bring the contest within the scope of § 208.01. Consequently, the court is without jurisdiction, * * *."

It is correct to say that our courts have no jurisdiction over an election contest involving such offices under our laws as they now stand. This does not mean that the legislature, if it saw fit, could not confer upon the court the right to supervise an election contest or recount of the ballots in order to determine who was legally elected. As long as the recount is part of the election process, it would be just as much within the constitutional power granted to the state as any other step in the elective process. The difficulty here is that our legislature has not included a recount of the votes, with or without supervision of the courts, as part of the election process with respect to a Representative in Congress.

In State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 212 N. W. 604, we held that the House of Representatives had exclusive jurisdiction to determine whether a person elected as a Representative in Congress was disqualified from becoming a member of that body. In Williams v. Maas, 198 Minn. 516, 270 N. W. 586, we went one step further and held that the state had no power to conduct a recount of the votes. Some of the statements made in these cases were followed in the Youngdale case, and those statements are too broad if taken out of context with the facts involved in those cases. I think the correct rule is that the state does have the power to provide for a recount of the votes as part of the elective process but that final determination of who is elected, or whether a candidate receiving the most votes is disqualified from holding office, lies with Congress.

ROGOSHESKE, JUSTICE (concurring specially).

I agree with the result. However, I do not believe this state is constitutionally divested of jurisdiction to provide a means whereby a candidate for Congress could contest an election in the courts of this state. This seems to be implied in the opinion. While there is language in our prior decisions, especially in Williams v. Maas, 198 Minn. 516, 270 N. W. 586,[1] which supports this implication, in my opinion such a holding neither is, nor should be regarded as, the basis for this decision. Moreover, I believe it is an inaccurate declaration

---

[1]See, also, State ex rel. 25 Voters v. Selvig, 170 Minn. 406, 212 N. W. 604; Youngdale v. Eastvold, 232 Minn. 134, 44 N. W. (2d) 459.

of the constitutional limitation on the state's power and duty to prescribe the time, place, and manner of electing members of Congress.

It is true that U. S. Const. art. I, § 5, vests final power in each house to determine who shall be seated as a member of Congress. However, U. S. Const. art. I, § 4, by express language not only grants power but imposes a duty on the legislatures of the several states to enact laws governing the election process. This process surely includes laws by which it can be determined who received the highest number of votes legally cast. An election contest which permits a recanvass of the votes cast, under court supervision designed to insure accuracy and fairness, is as much a part of the election process as the initial counting of the votes by the election judges. That it is so regarded by the legislature for all save the congressional office is demonstrated by the provisions of our Election Law. In fact, our courts are given jurisdiction to entertain an election contest over a state legislative office even though Minn. Const. art. 4, § 3, contains language of identical import with that contained in U. S. Const. art. I, § 5. With respect to an election contest to determine who received the highest number of legal votes, these constitutional provisions should not be regarded as a limitation on legislative power but only as an overriding constitutional prerogative vesting in each house of Congress, as well as in each branch of the state legislature, the final judgment as to who shall be seated as a member. It does not logically follow that, because each house of Congress has plenary power to disregard a judicial determination, providing statutory machinery for such a contest would be "officious and nugatory." Whether followed or not, the primary objective of such election-contest machinery is to ascertain the true expression of the will of the voters. The primary objective sought by the exercise of a final judgment by either Congress or the state legislature is identical. Practical considerations alone could demonstrate that any results from an intermediate court review would be of inestimable aid to Congress in arriving at a final judgment no less than such reviews have aided the state legislature. In the broad sense, state laws granting authority to courts to review the election process would not interfere with or encroach upon either the constitutional

power of the legislature or of Congress because such constitutional powers are plenary and, when exercised, final.[2]

Our construction of Minn. St. 204.32, subd. 2, should be based only upon the absence of any statutory authorization to judicially determine who received the most legal votes for the congressional office and not upon the proposition that this state and its courts are constitutionally divested of jurisdiction to provide for proceedings to contest an election.

OTIS, JUSTICE (concurring specially).

I join in the concurring opinions of Mr. Chief Justice Knutson and Mr. Justice Rogosheske.

MR. JUSTICE SHERAN, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[2] See, Wickersham v. State Election Bd. (Okla.) 357 P. (2d) 421.