Al FRANKEN, Petitioner,

v.

Timothy PAWLENTY, as Governor,
and Mark Ritchie, as Secretary
of State, Respondents,

and

Norm Coleman, Intervenor–Respondent.

No. A09–64.

Supreme Court of Minnesota.

March 6, 2009.

David L. Lillehaug, Richard D. Snyder, Fredrikson & Byron, P.A., Minneapolis, MN, Marc E. Elias, Kevin J. Hamilton, David J. Burman, Perkins Coie LLP, Washington, D.C., for petitioner.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Christie B. Eller, Deputy Attorney General, Kenneth E. Raschke, Jr., Assistant Attorney General, St. Paul, MN, for respondents.

Joseph S. Friedberg, Joseph S. Friedberg Chartered, Minneapolis, MN; James K. Langdon, John Rock, Dorsey & Whitney LLP, Minneapolis, MN; Tony P. Trimble, Matthew W. Haapoja, Trimble & Associates, Ltd., Minnetonka, MN; Frederic W. Knaak, Knaak & Kantrud, P.A., Vadnais Heights, MN, for intervenor-respondent.

## OPINION

PER CURIAM.

This matter is before our court on a petition of Al Franken brought under

Minn.Stat. § 204B.44 (2008). The petition seeks an order requiring respondents, Governor Timothy Pawlenty and Secretary of State Mark Ritchie, to promptly prepare and countersign a certificate of election and deliver the certificate to the Secretary of the United States Senate, without awaiting the conclusion of an election contest pending in state district court under Minn.Stat. ch. 209 (2008). Because we conclude that neither state nor federal law requires issuance of a certificate of election before the election contest is completed, we deny the petition.

Following the November 4, 2008, general election, the State Canvassing Board reported that in the election for the United States Senate, Norm Coleman received 1,211,590 votes and Al Franken received 1,211,375. The margin of 215 votes triggered an automatic manual recount under Minn.Stat. § 204C.35, subd. 1(b) (2008) (requiring a manual recount when the margin of victory is less than one-half of one percent). On January 5, 2009, after completion of the recount, the State Canvassing Board certified that Franken received 1,212,431 votes and Coleman received 1,212,206 votes, a margin of victory for Franken of 225 votes. On January 6, 2009, Coleman filed a notice of contest in Ramsey County District Court under Minn.Stat. ch. 209, challenging the election result reported by the State Canvassing Board. The election contest remains pending.

On January 12, 2009, Franken asked Governor Pawlenty and Secretary of State Ritchie by letter to issue a certificate of election for him as United States Senator, notwithstanding the ongoing election contest in state court. The Governor and Secretary of State declined, citing Minn. Stat. § 204C.40, subd. 2 (2008), as requiring them to await completion of the pending election contest before issuing a certificate of election.

Franken then filed this petition on January 13, 2009, naming the Governor and Secretary of State as respondents and seeking an order requiring them to issue a certificate of election for him. Norm Coleman intervened as a respondent. The petition is brought under Minn.Stat. § 204B.44, which allows our court to order correction of "any wrongful act, omission, or error of . . . the secretary of state, or any other individual charged with any duty concerning an election." The question, then, is whether the Governor and Secretary of State have a present legal duty to deliver a certificate of election for Franken based on the State Canvassing Board's declaration that Franken received the highest number of votes in the recount of the election for United States Senator. Franken contends that Minnesota law, specifically Minn.Stat. § 204C.40, subd. 1 (2008), requires the Governor to prepare a certificate of election, countersigned by the Secretary of State, and to deliver the certificate to the United States Senate, without awaiting the conclusion of the pending election contest. Franken argues further that to construe Minnesota law otherwise would frustrate the scheme of federal law that provides for representation of the state by two Senators commencing on the date Congress designates for the beginning of newly-elected Senators' terms and would infringe on the authority of the Senate under Article I, Section 5, of the United States Constitution to determine the "Elections, Returns and Qualifications of its own Members." The Governor and Secretary of State (hereinafter collectively referred to as the Governor) contend that state law precludes them from issuing a certificate of election until the election contest is completed, and that federal law does not require a different conclusion.

We address the state law and the federal law issues in turn.

## I.

■ Franken's first argument is that, based on the relevant Minnesota statutes, the Governor has a present duty to issue and deliver a certificate of election for Franken without awaiting the conclusion of the pending election contest.[1] The issuance of certificates of election is governed by Minn.Stat. § 204C.40 (2008). Subdivision 1 of section 204C.40 prescribes the official who issues the certificate of election and the person to whom the certificate is delivered, and differs in those provisions depending on whether the election is for county, state, or federal office. Both subdivision 1 and subdivision 2 contain provisions for when certificates are to be issued in different election circumstances. Section 204C.40, subdivision 1, provides:

> The county auditor shall prepare an election certificate for every county candidate declared elected by the county canvassing board, and the secretary of state shall prepare a certificate for every state and federal candidate declared elected by either a county canvassing board or the State Canvassing Board. Except as otherwise provided in this section, the secretary of state or county auditor, as appropriate, shall deliver an election certificate on demand to the elected candidate. In an election for United States representative, the secretary of state shall deliver the original election certificate to the chief clerk of

the United States House of Representatives. *In an election for United States senator, the governor shall prepare an original certificate of election, countersigned by the secretary of state, and deliver it to the secretary of the United States Senate.* In an election for state representative or state senator, the secretary of state shall deliver the original election certificate to the chief clerk of the house or the secretary of the senate.... *If a recount is undertaken by a canvassing board pursuant to section 204C.35, no certificate of election shall be prepared or delivered until after the recount is completed. In case of a contest, the court may invalidate and revoke the certificate as provided in chapter 209.*

(Emphasis added.) Subdivision 2 of section 204C.40 provides:

> No certificate of election shall be issued until seven days after the canvassing board has declared the result of the election. *In case of a contest, an election certificate shall not be issued until a court of proper jurisdiction has finally determined the contest.* This subdivision shall not apply to candidates elected to the office of state senator or representative.

(Emphasis added.)

There is no dispute among the parties that in an election in which there is no recount or election contest, under section 204C.40 the triggering event for issuance of a certificate of election is the declaration by the appropriate canvassing board of the

---

1. Based on oral argument, it appears that Franken seeks a "conditional" or "provisional" certificate of election. But it remains unclear whether he is asking for a certificate of election that is on its face conditioned on the outcome of the election contest. Franken cites, and we are aware of, no authority for the Governor to issue a certificate of election that is designated on its face as conditional or

provisional. Alternatively, Franken may be suggesting that the provision in Minn.Stat. § 204C.40, subd. 1, for invalidation and revocation of a certificate after an election contest makes any certificate provisional if an election contest is filed. See *infra* pp. 6, 13–14 n. 8. Or, he may be referring to the authority of the United States Senate to seat a Senator provisionally. See *infra* pp. 18–19, 22–23.

result of the election. Nor is there any dispute that if a recount takes place, the issuance of a certificate of election is delayed until the appropriate canvassing board declares the result of the recount.

The disagreement arises when an election contest has been commenced in state court under chapter 209, which circumstance is specifically addressed in section 204C.40, subdivision 2: "In case of a contest, an election certificate shall not be issued until a court of proper jurisdiction has finally determined the contest."[2] Franken contends that this contest tolling provision does not apply to elections for the United States Senate, and therefore this case is governed by the provisions of subdivision 1 that require issuance of a certificate of election after completion of a recount. Because the State Canvassing Board has declared Franken the candidate who received the most votes in the recount, he contends he is entitled to a certificate of election without further delay— and particularly, without awaiting the conclusion of the election contest under way in district court. The Governor and intervenor-respondent Coleman, on the other hand, argue that the contest tolling provision expressly addresses the circumstance of an election contest under chapter 209, does apply to a Senate election, and prohibits issuance of a certificate of election until the election contest has been decided.

The key question raised by the parties' disagreement is the proper scope of the contest tolling provision. Franken's contention that the contest tolling provision does not apply to United States Senate elections is based on the triggering phrase in the statute, "until a court of proper jurisdiction has finally determined the contest." Minn.Stat. § 204C.40, subd. 2. He asserts that this phrase means the tolling provision applies only to an election contest that can be "finally determined" by "a court of proper jurisdiction." *Id.* Franken contends that the tolling provision therefore cannot pertain to a contest for the Senate because there is no court of proper jurisdiction that can finally determine such a contest.

Franken's contention that no court can finally determine a contest for the Senate is based on the broad authority of the Senate, under U.S. Const., art. I, § 5, to make the final determination about the election of United States Senators[3] and also the limited authority provided to a court in an election contest for the Senate under Minn.Stat. § 209.12 (2008).[4] Under

2. We will refer to this sentence as the "contest tolling provision" to distinguish it from the provision in section 204C.40, subdivision 1, that tolls the issuance of an election certificate during a recount, that is, the "recount" tolling provision.

3. Article I, Section 5, provides: "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members."

4. Section 209.12 provides:

When a contest relates to the office of a senator ... of the United States, *the only question to be decided by the court is which party to the contest received the highest number of votes legally cast at the election and is therefore entitled to receive the certificate of*

*election.* The judge trying the proceedings shall make findings of fact and conclusions of law upon that question. Evidence on any other points specified in the notice of contest, including but not limited to the question of the right of any person to nomination or office on the ground of deliberate, serious, and material violation of the provisions of the Minnesota Election Law, must be taken and preserved by the judge trying the contest, or by some person appointed by the judge for that purpose; but the judge shall make no findings or conclusion on those points.

*After the time for appeal has expired, or in the case of an appeal, after the final judicial determination of the contest,* upon application of either party to the contest, the court administrator of the district court shall

section 209.12, in a contest over election to the United States Senate, the district court is authorized to make findings and conclusions only as to "which party to the contest received the highest number of votes legally cast at the election and is therefore entitled to receive the certificate of election." Evidence may be taken on other points raised in the notice of election contest, but the court does not make findings or conclusions on those issues. Franken's implication apparently is that because the court does not decide those other issues, it cannot "finally determine" the election contest. Further, because the ultimate determination of all the issues presented in the contest is within the constitutional authority of the Senate to decide, Franken concludes no court can make a final determination of the contest.

The Governor and Coleman respond that the expression "finally determined the contest" used in the contest tolling provision simply refers to the final decision of the state courts in adjudicating an election contest authorized in chapter 209, and such a decision is made even in a contest involving an election for the United States Senate. Franken's argument, in contrast, necessarily assumes that the "contest" that must be finally determined, as provided in the tolling provision, refers to the ultimate dispute—that is, which candidate is to be seated. We conclude for several reasons that in the contest tolling provision the legislature used "contest" in the more narrow sense of a chapter 209 proceeding.

First, the prefatory phrase in the contest tolling provision, "In case of a contest," is also used in the invalidate-and-revoke provision of section 204C.40, subdivision 1, which makes specific reference to chapter 209: *"In case of a contest,* the court may invalidate and revoke the certificate *as provided in chapter 209."* (Emphasis added.) It is apparent that "contest" as used in this subdivision 1 provision means a chapter 209 election contest. Different meanings should not be attributed to "contest" as used in the two subdivisions of section 204C.40. *See State v. Wiltgen,* 737 N.W.2d 561, 570–71 (Minn.2007) (sections of the same statute should be construed together). Because "contest" in subdivision 1 refers to a chapter 209 election contest, "contest" in subdivision 2 of the same section must also refer to a chapter 209 election contest.

Second, comparison of the language in the contest tolling provision with the language used in Minn.Stat. § 209.12 to prescribe the procedures for election contests specific to congressional elections demonstrates that the legislature did not intend the broad meaning of "contest" advocated by Franken. In particular, section 209.12 provides that "[a]fter the time for appeal has expired, or in the case of an appeal, *after the final judicial determination of the contest,"* upon application of either party, the court administrator is to forward the evidence taken, along with the files and records of the proceedings, to the Senate or the House of Representatives, as the case may be. (Emphasis added.) The "contest" in the phrase "after the final judicial determination of the contest" in section 209.12 plainly means the chapter 209 contest that takes place in the Minnesota court, not the ultimate dispute that may be resolved in the Senate based on the evidence taken in the chapter 209 election contest and forwarded by the court

---

promptly certify and forward the files and records of the proceedings, with all the evidence taken, to the presiding officer of the Senate.... The court administrator shall endorse on the transmittal envelope or

container the name of the case and the name of the party in whose behalf the proceedings were held, and shall sign the endorsement.
(Emphasis added.)

administrator. Notably, the phrase used in section 209.12 to trigger transmission of the evidence to the Senate or House ("after the final judicial determination of the contest") is virtually identical to the phrase used in the contest tolling provision to trigger the delivery of a certificate of election after a contest ("a court of proper jurisdiction has finally determined the contest"). Just as "final judicial determination of the contest" in section 209.12 refers to the end of the chapter 209 contest, the contest "finally determined" by a court of proper jurisdiction in the tolling provision is the chapter 209 contest. *See* Minn.Stat. § 645.16(5) (2008) (the intention of the legislature may be ascertained by considering, among other things, "other laws upon the same or similar subjects"); *Harris v. County of Hennepin*, 679 N.W.2d 728, 732 (Minn.2004) (statutes should be read as a whole with other statutes that address the same subject).

Third, this narrow interpretation of "contest" is consistent with our interpretation in *Odegard v. Olson*, 264 Minn. 439, 119 N.W.2d 717 (1963), of similar language in the predecessor statute to the current contest tolling provision, Minn.Stat. § 204.32, subd. 2 (1961). The statute at issue in *Odegard* provided: "In case of a contest, the certificate may not be issued *until the proper court has determined the contest."* Minn.Stat. § 204.32, subd. 2 (emphasis added). Like the current contest tolling provision, the predecessor statute used both the prefatory phrase "in case of a contest" and a triggering phrase

based on when a court "has determined the contest." We construed "contest" in the predecessor statute as referring to chapter 209 proceedings only and not to a congressional contest. We explained:

We are accordingly of the view that the provision relating to "contest" incorporated in § 204.32 refers solely to contests initiated pursuant to the general election laws of this state and is not applicable to a contest in the House of Representatives in Congress. We are of the further view that the term "proper court" in the same section applies to the state court which is given jurisdiction under c. 209 and does not include the Congress of the United States.

*Odegard,* 264 Minn. at 444, 119 N.W.2d at 721.

We reach a similar conclusion regarding the current contest tolling provision. The term "contest" in Minn.Stat. § 204C.40, subd. 2, refers to contests initiated pursuant to the general election laws of this state—that is, chapter 209—and not to the potential continuation of that contest into the United States Senate. Accordingly, a court of proper jurisdiction can finally determine a chapter 209 election contest involving an election for the United States Senate, and the contest tolling provision of section 204C.40, subdivision 2, therefore applies to such an election.[5]

 In addition to arguing that the contest tolling provision does not apply to United States Senate elections, Franken contends that subdivision 1 of section 204C.40 creates a mandate to issue the

---

5. Our conclusion that United States Senate elections are not exempt from the contest tolling provision is further buttressed by the fact that section 204C.40, subdivision 2, contains an express exception for state legislative elections, but none for congressional elections. Franken argues that because the houses of the state legislature, like Congress, are constitutionally authorized to judge "the elec-

tion returns and eligibility of [their] own members," Minn. Const. art. IV, § 6, the exception logically must apply as well to congressional elections. But our rules of statutory interpretation provide that "[e]xceptions expressed in a law shall be construed to exclude all others." Minn.Stat. § 645.19 (2008).

certificate on completion of a recount and is a more specific statute that should prevail over the more general subdivision 2.[6] This argument fails for two reasons.

First, a specific provision prevails over a general provision only if a conflict between the two is irreconcilable. Minn.Stat. § 645.26, subd. 1 (2008). We conclude that there is no conflict between the requirements of subdivisions 1 and 2: the subdivisions simply contain different timing provisions applicable in different electoral circumstances.

Second, contrary to Franken's argument, subdivision 1 is not specific to United States Senate elections. Rather, subdivision 1 sets out the parameters for the preparation and delivery of certificates of election not just for Senate elections, but for all county and state elections as well. Elections for United States Senator are separately mentioned in only one sentence, and that sentence only describes the officials who prepare the certificate and to whom it is sent; the sentence says nothing about timing. In contrast, the provisions of subdivision 1 on which Franken relies are applicable to a broader range of elections. There is no indication, for example,

that the recount tolling provision and the invalidate-and-revoke provision in subdivision 1 are limited to Senate elections. Nor is the sentence in subdivision 1 that provides for delivery of an election certificate "on demand" specific to Senate elections.[7] More importantly, that provision is prefaced by the phrase "[e]xcept as otherwise provided in this section." It follows that even if the "on demand" language otherwise applied to Senate elections, it would be trumped by the more specific provisions in section 204C.40 for tolling the issuance of a certificate pending a recount or election contest.[8]

Finally, Franken asserts that his position is supported by *Odegard*, because in that case we refused to enjoin the issuance of a certificate of election while an election contest was pending in the United States House of Representatives, based on an earlier version of the contest tolling provision, and because we stated that "[o]ur courts are divested of jurisdiction by U.S. Const. art. I, § 5." *Odegard*, 264 Minn. at 442, 119 N.W.2d at 720. Franken's reliance on *Odegard* is misplaced. Like the current contest tolling provision, its predecessor in section 204.32, subdivision 2, barred the issuance of an election certifi-

---

6. *See* Minn.Stat. § 645.26, subd. 1 (2008) (stating that if a conflict between two statutory provisions is irreconcilable, "the special provision shall prevail and shall be construed as an exception to the general").

7. "Except as otherwise provided in this section, *the secretary of state* or county auditor, as appropriate, shall deliver an election certificate on demand *to the elected candidate*." Minn.Stat. § 204C.40, subd. 1 (emphasis added). Because the Senate-specific sentence in subdivision 1 provides that for U.S. Senate elections the certificate is delivered not by the Secretary of State but by the Governor and not to the candidate but to the Secretary of the United States Senate, it is doubtful this sentence applies at all to a Senate election.

8. Franken also asserts that the provision in subdivision 1 for invalidation and revocation

of an election certificate is an additional indication that a certificate in a United States Senate race can and should be issued without awaiting completion of an election contest. Respondents explain that the authority in section 204C.40, subdivision 1, to invalidate and revoke a certificate of election is needed not because the contest tolling provision is inapplicable to United States Senate elections, but rather because certain election contests under chapter 209 can properly be commenced *after* a certificate of election has been issued. *See* Minn.Stat. § 209.021, subd. 1 (2008) (providing that some notices of contest need not be filed until 10 days after statements of campaign receipts and disbursements are filed, which is after the deadline for issuing a certificate of election).

cate "until the proper court has determined the contest." 264 Minn. at 440, 119 N.W.2d at 719. We held in *Odegard* that section 204.32 did not bar the issuance of a certificate of election while an election contest was pending in the House of Representatives because Minn.Stat. ch. 209, as it then read, did not authorize an election contest for congressional office. 264 Minn. at 443, 119 N.W.2d at 720 (citing Minn. Stat. § 209.02, subd. 1 (1961)). But after *Odegard,* chapter 209 was amended to expressly provide for contests in congressional elections. *See* Minn.Stat. § 209.02, subd. 1 (2008); *id.* § 209.12.

Franken contends that *Odegard* remains good law despite the change in the statute because of its "constitutional" ruling that our courts are divested of jurisdiction by Article I, Section 5. This argument overlooks the fact that *Odegard* was decided by only six members of a seven-member court,[9] and only three of the six justices joined in the statements about the jurisdictional limitations of the Minnesota courts on which Franken relies as the court's "constitutional" ruling. The remaining three justices concurred in the result only. 264 Minn. at 444, 119 N.W.2d at 721 (Knutson, C.J., concurring); *id.* at 446, 119 N.W.2d at 722 (Rogosheske, J., concurring); *id.* at 448, 119 N.W.2d at 723 (Otis, J., concurring). Significantly, the three concurring justices disagreed with the statement that Article I, Section 5, divested Minnesota courts of jurisdiction over congressional elections. Instead, they would have held only that jurisdiction was lacking based on the absence of legislative authorization for election contests in congressional elections. *See* 264 Minn. at 446, 119 N.W.2d at 722 (Knutson, C.J., concurring); *id.* at 448, 119 N.W.2d at 723 (Rogosheske, J., concurring). Chief Justice

Knutson explained, "the states have been given the authority to prescribe all steps necessary to complete the elective process, subject to the overriding power of Congress to determine who has been properly elected and to refuse to seat one who is determined not to have been properly elected." *Id.* at 445, 119 N.W.2d at 721 (Knutson, C.J., concurring).

Franken's reliance on *Odegard* is further undermined by the United States Supreme Court's decision in *Roudebush v. Hartke,* 405 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972). In *Roudebush,* the Court, as Chief Justice Knutson had in *Odegard,* recognized that the authority of the states to regulate elections of Senators under Article I, Section 4, coexists with the Article I, Section 5, authority of Congress to determine the election and admission of its members. 405 U.S. at 24, 92 S.Ct. 804.

In summary, we find no merit in Franken's arguments that the contest tolling provision of section 204C.40, subdivision 2, does not apply to a Senate election and that there is a more specific mandate in section 204C.40, subdivision 1, to issue a certificate of election on completion of a recount. The plain language of Minn.Stat. § 204C.40, subd. 2, provides that no election certificate can be issued in this Senate race until the state courts have finally decided the election contest pending under chapter 209.

## II.

■ Having decided that state law does not require, indeed does not permit, issuance of a certificate of election until the election contest in state court is completed, we turn to Franken's arguments based on federal law. Franken argues that two aspects of federal law require that a certifi-

---

**9.** Justice Sheran, not having been a member of the court when the case was submitted, took no part. *Odegard,* 264 Minn. at 448, 119 N.W.2d at 723.

cate of election be issued immediately. First, Franken contends that federal law creates a structure under which each state must be represented by two Senators on the date designated by Congress for commencement of newly-elected Senators' terms, and the Governor therefore should be required to issue an election certificate at once to comply with that timetable. Second, Franken contends that the Governor's refusal to issue an election certificate infringes on the Senate's exclusive authority under Article I, Section 5, of the United States Constitution to determine its own membership.

Franken's first argument begins with Article I, Section 3, and Amendment XVII of the United States Constitution, which both provide that the Senate "shall be composed of two Senators from each State." Under 2 U.S.C. § 1 (2006), the term of a Senator commences on January 3. 2 U.S.C. § 1a (2006) states: "It shall be the duty of the executive of the State from which any Senator has been chosen to certify his election...." 2 U.S.C. § 1b (2006) further requires the certificate described in 2 U.S.C. § 1a to be countersigned by the state's secretary of state. Franken argues that the combined effect of these provisions is to impose a duty on the state "to structure and operate its election system so as to provide its citizens full representation in a timely fashion," which he contends requires the Governor to issue a certificate of election without awaiting completion of the election contest.

The Governor responds that the duty to issue a certificate of election under 2 U.S.C. § 1a arises only once a Senator "has been chosen." The Governor contends that in this case the process of choosing a Senator has not yet been completed in accordance with Minnesota law.

None of the provisions cited by Franken expressly obligate the Governor to deliver a certificate of election by a date certain. Nor does Article I, Section 4, expressly require state legislatures to structure the "Times, Places and Manner of holding Elections for Senators" specifically so that newly-elected Senators will in every eventuality be seated by the date Congress has designated for the beginning of their terms. Franken cites no authority that construes these provisions as creating the temporal mandate that he posits.[10]

■ Second, Franken argues that refusal to issue a certificate of election impermissibly infringes on the Senate's authority under Article I, Section 5, to "be the Judge of the Elections, Returns and Qualifications of its own Members." Franken acknowledges, as do all participants in this matter, that the authority of the Senate under Article I, Section 5, is plenary, and the Senate is therefore free to seat Franken without a certificate of election if it so chooses, either provisionally or not. *Cf. Odegard,* 264 Minn. at 443, 119 N.W.2d at 720 ("The House of Representatives may seat members elected without a certificate...."). Accordingly, the precise nature of the infringement of Senate authority that Franken asserts is unclear.

Although Franken cites no cases that support the amorphous concept of infringement of Senate authority that he advances, the Supreme Court has addressed the relationship between the authority delegated to state legislatures to prescribe "the Times, Places and Manner

---

10. We observe that the Senate itself has on occasion declined to seat a Senator pending its own resolution of an election dispute. *See* Anne M. Butler and Wendy Wolff, U.S. Sen. Hist. Off., *United States Senate Election, Ex-* *pulsion and Censure Cases 1793–1990, Sen. Doc. No. 103–33,* at 326–28 (seat vacant from January 1927 to December 1929), 421–24 (seat vacant from January to August 1975) (U.S. Government Printing Office 1995).

of holding Elections" for members of Congress in Article I, Section 4, of the Constitution and the authority of Congress under Article I, Section 5, to determine the election and qualifications of its own members. In *Roudebush v. Hartke*, 405 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972), R. Vance Hartke, the candidate for United States Senate who was certified by Indiana's governor as the winner of the general election, was provisionally seated by the Senate. *Roudebush*, 405 U.S. at 18, 92 S.Ct. 804. His opponent, Richard Roudebush, petitioned for a statewide recount under Indiana law. *Id.* at 17, 92 S.Ct. 804. Hartke went to federal court seeking to enjoin the recount on grounds that it was an unconstitutional encroachment on the power of the Senate under Article I, Section 5. *Roudebush*, 405 U.S. at 17, 92 S.Ct. 804.

Initially, the Court noted that which candidate was entitled to be seated in the Senate was "a nonjusticiable political question." *Id.* at 19, 92 S.Ct. 804. But, the Court continued, the question before it was different: "whether an Indiana recount of the votes in the 1970 election is a valid exercise of the State's power, under Art. I, § 4, to prescribe the times, places, and manner of holding elections, or is a forbidden infringement upon the Senate's power under Art. I, § 5." *Roudebush*, 405 U.S. at 19, 92 S.Ct. 804.

The Court began its analysis by observing that the authorization under Article I, Section 4, for the states to prescribe the times, places, and manner of holding elections empowers the states "to provide a complete code for congressional elections," encompassing everything from registration of voters to publication of election returns:

"[T]hese comprehensive words embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to no-

tices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved."

*Roudebush*, 405 U.S. at 24–25, 92 S.Ct. 804 (quoting *Smiley v. Holm*, 285 U.S. 355, 366, 52 S.Ct. 397, 76 L.Ed. 795 (1932)). The Court noted that Indiana, among "many other States," had found the availability of a recount "necessary to guard against irregularity and error in the tabulation of votes." *Id.* at 25, 92 S.Ct. 804. The Court concluded that a recount "is an integral part of the Indiana electoral process and is within the ambit of the broad powers delegated to the States by Art. I, § 4." 405 U.S. at 25, 92 S.Ct. 804.

Addressing the second part of the inquiry, the Court rejected the argument that the statewide recount usurped "a power that only the Senate could exercise," namely, judging the qualifications of a member. *Id.* at 24, 92 S.Ct. 804. The Court acknowledged that "a State's verification of the accuracy of election results pursuant to its Art. I, § 4, powers is not totally separable from the Senate's power to judge elections and returns." 405 U.S. at 25, 92 S.Ct. 804. However, the Court reasoned, a recount would "usurp" the Senate's power under Article I, Section 5, "only if it frustrates the Senate's ability to make an independent final judgment." 405 U.S. at 25, 92 S.Ct. 804. Rejecting the idea that "a recount would increase the probability of election fraud and accidental destruction of ballots," *id.* at 26, 92 S.Ct. 804, the Court noted: "A recount does not prevent the Senate from independently

evaluating the election any more than the initial count does." *Id.* at 25, 92 S.Ct. 804.

Under *Roudebush,* therefore, Franken's argument that failure to issue a certificate of election pending completion of the election contest interferes with the authority of the Senate presents a twofold inquiry: (1) are election contests under chapter 209 (limited though they may be to the question of which candidate received the highest number of votes validly cast) "an integral part of the [Minnesota] electoral process" and therefore "within the ambit of the broad powers delegated to the States by Art. I, § 4"; and (2) do election contests under chapter 209 "frustrate[ ] the Senate's ability to make an independent final judgment" and thereby "usurp the Senate's power"? More particularly, does the failure to issue a certificate of election while a contest is pending under chapter 209 usurp the Senate's power to seat its own members?

With respect to the first question, the Supreme Court concluded in *Roudebush* that Indiana's administrative recount was "an integral part of the Indiana electoral process," observing that it was "one procedure necessary to guard against irregularity and error in the tabulation of votes." 405 U.S. at 25, 92 S.Ct. 804. In a recount in Indiana "the voting machine tallies are checked and the sealed bags containing the paper ballots are opened. The recount commission may make new and independent determinations as to which ballots shall be counted." *Id.* at 23, 92 S.Ct. 804.

Similarly, in Minnesota a notice of election contest may be brought "over an irregularity in the conduct of an election or canvass of votes, over the question of who received the largest number of votes legally cast." Minn.Stat. § 209.02, subd. 1 (2008). In addition, in our previous orders in this election dispute we have explained that the scope of a manual administrative recount under Minn.Stat. § 204C.35 (2008) is narrow and not likely to be able to address all possible irregularities and errors that may arise because the State Canvassing Board lacks authority to call witnesses and receive exhibits.

An election contest under chapter 209 can therefore appropriately be characterized as a procedure "to guard against irregularity and error in the tabulation of votes," and is therefore "an integral part of the [ ] electoral process ... within the ambit of the broad powers delegated to the States under Art. I, § 4." *Roudebush,* 405 U.S. at 25, 92 S.Ct. 804.

With respect to the second question, the Court in *Roudebush* concluded that a recount would "usurp" the Senate's function under Article I, Section 5, "only if it frustrates the Senate's ability to make an independent final judgment." 405 U.S. at 25, 92 S.Ct. 804. Minnesota Statutes § 209.12 explicitly acknowledges the Senate's authority under Article I, Section 5, by limiting the scope of an election contest for congressional office to the question of who received the highest number of votes legally cast in the election. Moreover, by requiring the court hearing the election contest brought under chapter 209 to preserve all evidence taken and transmit it to the Senate upon request, section 209.12 does nothing to frustrate the Senate's ability to make an independent judgment as to which candidate to seat. An election contest under chapter 209 therefore does not usurp the Senate's power under Article I, Section 5, to judge the qualifications of its members.

Franken seeks to distinguish *Roudebush* on the ground that Hartke had received a certificate of election and was provisionally seated by the Senate, so the delay complained of here was not present in that case. The question, then, is whether the absence of a certificate of election here

"frustrates the Senate's ability to make an independent final judgment." Franken acknowledges, however, that the Senate has full authority to seat him, even without a certificate of election. In other words, if the Senate believes delay in seating the second Senator from Minnesota adversely affects the Senate, it has the authority to remedy the situation and needs no certificate of election from the Governor to do so. We cannot conclude, therefore, that the Minnesota Legislature's choice to defer issuance of a certificate of election until the full state election process has run its course unconstitutionally usurps the Senate's authority.

At oral argument, Franken argued that the state should not put the Senate in the position of abrogating its own rules in order to provide Minnesota with the full and timely representation that the Constitution and federal statutes contemplate. He argued that as a matter of federalism and comity, the state should not be allowed to "opt out" of the federally-created structure of two Senators from each state sitting for the Senate's full term by choosing not to issue a certificate of election, even on a provisional basis, until the election contest in Minnesota is completed. But comity is not an adequate basis for us to overturn legislative decisions. It is our legislature that is charged by both the federal and state constitutions with the authority and responsibility to fashion the processes for the election of United States Senators from Minnesota. The legislature has done so and has clearly chosen not to authorize issuance of a certificate of election until an election contest is completed. Franken has failed to establish that either the United States Constitution or federal statutes mandate the issuance of a certificate of election immediately. In the absence of such a mandate, overturning a legislative choice in order to maintain com-

ity with a federal scheme is not within our judicial powers.

We conclude that there is no federal statutory mandate that a state issue a certificate of election by the date designated by Congress for the commencement of newly-elected Senators' terms. And because the Senate has authority to seat a Senator without a state-issued certificate of election, application of the contest tolling provision in Minn.Stat. § 204C.40, subd. 2, to an election for the United States Senate does not usurp the Senate's power and does not conflict with federal law, either statutory or constitutional.

Petition denied.

MAGNUSON, C.J., and ANDERSON, G. BARRY, J., took no part in the consideration or decision of this case.